460 A.2d 295

**Robert DeMARTINO, Appellant,**

v.

**ALBERT EINSTEIN MEDICAL CENTER, NORTHERN DIVISION and Stephen Sobel, D.D.S.**

Superior Court of Pennsylvania.

Argued Feb. 18, 1981.

Filed April 29, 1983.

494

Charles P. Menszak, Jr., Philadelphia, for appellant.
Kevin H. Wright, Philadelphia, for appellees.

Before PRICE,* MONTEMURO and VAN der VOORT, JJ.

PRICE, Judge:

The present appeal presents the issue of whether a prospective medical malpractice plaintiff need have knowledge, or should, through the exercise of reasonable diligence, have knowledge that a personal injury which he has suffered was the result of professional negligence, before the two-year statute of limitations commences against his cause of action.

Appellant herein contends that the lower court erred in granting appellee Albert Einstein Medical Center ("AEMC") summary judgment on the grounds that the statute of limitations barred his complaint in trespass. We disagree and affirm the order of the lower court.

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035. The evidence must be viewed in the light most favorable to the non-moving party and all doubts must

* This decision was reached prior to the death of Price, J.

be resolved against the moving party. *Wallace v. Horvath,* 283 Pa. Superior Ct. 179, 180–181, 423 A.2d 1047, 1048 (1980), *Acker v. Palena,* 260 Pa. Superior Ct. 214, 393 A.2d 1230 (1978). We shall, therefore, recite the undisputed facts of record as contained in the pleadings, interrogatories and admissions in compliance with this standard.

In October 1973, appellant Robert DeMartino engaged the services of Albert Einstein Medical Center on an outpatient basis for treatment of decayed teeth. At that time he was informed that his prospective endodonic treatment would extend over one and one half years. From this time until August 1977 when appellant discontinued his relationship with AEMC, he had several crowns fitted and placed. The endodonic treatment appellant underwent for a little more than three years was more prolonged and extensive than had at first been indicated to appellant by AEMC's physicians. Appellant alleges that throughout the course of the dental procedures he was repeatedly told by his attending dentists that his case was quite complex.

In May 1977, three and one half years after he originally began his treatment at AEMC his attending dentist referred him to Dr. Brothman, an endodonic specialist also employed at AEMC, in order to treat two of appellant's molars which were causing considerable pain and discomfort. In his answer to appellee's interrogatory # 44 appellant describes what transpired at the May 1977 appointment he had with Dr. Brothman:

> Dr. Brothman told me one [molar] had gone too far to save and that the other tooth had received a 'severe gross perforation' thereby causing infection and bone erosion. When I asked Dr. Brothman how this could have happened, he told me that whoever had done the root canal 'could not have been watching what he was doing.' When I informed Dr. Brothman that the work was that of his colleague, Dr. Houseman, he refused to discuss the matter any further.

This same conversation with Dr. Brothman was described verbatim by appellant in a March 18, 1979 letter addressed

to the Patient Relations Committee of the Philadelphia County Dental Society informing said committee of his intention to file a grievance. (R. 31a).[1] Appellant also wrote in this letter: "The above incidents made it clear to me that remaining a patient at Albert Einstein was bringing no progress to my case and as the above example shows, conditions were in some cases worse than when I began as a patient." (R. 31a).

Appellant alleges that it was not until a 1979 visit to another dentist not associated with AEMC that he was advised that "his condition was not the natural progression of a disease but the result of improper treatment on the part of AEMC." Appellant's Br. at 9.

On September 10, 1979, twenty-eight months after appellant's conversation with Dr. Brothman, he commenced this suit by filing a Writ of Summons in Trespass. In his complaint, filed February 7, 1980, DeMartino alleged two separate causes of action. The first alleged that he suffered personal injuries caused by improper treatment administered by the agents and employees of appellee AEMC. The second count alleged a cause of action against Dr. Stephen Sobel individually for alleged improper treatment beginning August 1977.[2] On March 4, 1980 appellee AEMC filed an answer properly raising in new matter the allegation that DeMartino was put on notice of the alleged mistreatment in May 1977 and that the action was, therefore, barred by the statute of limitations.

Following a period of discovery during which were filed into the record the above described letter and interrogatory, appellee AEMC filed a motion for summary judgment alleging the bar of the statute of limitations. Oral argument followed in the Court of Common Pleas of Philadelphia

1. This letter was introduced into the record in response to a request by AEMC for production of documents. No question exists between the parties as to the authenticity of this letter.

2. The order for summary judgment presently before us on appeal granted the motion made by AEMC. Neither that order nor this appeal has any bearing on defendant Stephen Sobel.

County (the Honorable Stanley Greenberg, presiding) and appellee's motion for summary judgment was granted; final judgment was entered in AEMC's favor on September 29, 1980.[3] Appellant thereafter undertook this appeal.

Appellant's primary contention before us is that the statute of limitations in a medical malpractice action should not begin to run until a plaintiff has reason at least to suspect that a legal duty owing him has been breached. The particular choice of semantics and implications contained in appellant's framing of the issue is not an accurate reflection of the discovery rule as formulated in our courts' case law. We, therefore, reject appellant's theory.

The Pennsylvania statute of limitations [4] provides that personal injury actions must be brought within two years of the accrual of the cause of action, i.e., from the date the injury is sustained. An exception to this limitation has been articulated by our courts in medical malpractice cases where very often the patient (and prospective plaintiff) has no reason to believe that he has suffered an injury caused by the administration of a physician's treatment. This exception, coined the "discovery rule," has been most recently explained in *Petri v. Smith*, 307 Pa. Superior Ct. 261, 453 A.2d 342 (1982):

> The 'discovery rule' exception is premised on the concept that where the existence of an injury cannot be reasonably ascertained, the statute of limitations does not begin to run until such time as the injury's existence is known

**3.** In his memorandum opinion accompanying the order of summary judgment, Judge Greenberg held that the two criteria necessary to start the running of the statute of limitations, knowledge of injury and operative cause, had been clearly evidenced by appellant's letter to the Dental Society. Slip op. at 7–8.

**4.** 12 P.S. § 34 (repealed); 42 Pa.C.S.A. § 5524 provides:
The following actions and proceedings must be commenced within two years:
... (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

or discovered, or becomes knowable or discoverable by the exercise of reasonable diligence.

*Id.*, 307 Pa.Superior at 263, 453 A.2d 342.

This rule developed[5] as a judicial interpretation of the term "injury" as used in the limitations statute. *Anthony v. Koppers Co., Inc.*, 496 Pa. 119, 436 A.2d 181 (1981). The initial case applying this rule to the medical malpractice area was *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959), wherein the court held that the "injury is done when the act heralding a possible tort inflicts a damage which is physically *objective* and *ascertainable.*" *Id.*, 397 Pa. at 290, 154 A.2d at 792. (Emphasis added). Inherent in such a rule is that plaintiff must have, or should have through the exercise of reasonable diligence, a certain level of knowledge with regard to his injury and the circumstances surrounding its occurrence before the statute against his cause of action begins to run.

According to appellant, before the statute is held to have begun as of a particular date there must be a showing that the plaintiff discovered or should have reasonably discovered "(a) the injury; (b) knowledge of the operative cause of the injury and (c) the negligent conduct causing the injury." Appellant's Br. at 8. By describing the requisite knowledge in this way appellant urges us to accept a rule which would toll the limitations statute until such time as the putative malpractice plaintiff has knowledge that malpractice has been committed and as a result, legal rights have vested.[6]

5. For an excellent treatment of the judicial evolution of the Pennsylvania discovery rule, *see* Judge Spaeth's opinion in *Anthony v. Koppers Co., Inc.*, 284 Pa.Superior Ct. 81, 425 A.2d 428 (1980), *rev'd. on other grounds*, 496 Pa. 119, 436 A.2d 181 (1981).

6. In support of this theory, appellant relies on *Carney v. Barnett*, 278 F.Supp. 572 (E.D.Pa.1967), and *Gemignani v. Philadelphia Phillies National League Baseball Club, Inc.*, 287 F.Supp. 465 (E.D.Pa.1967). Therein, the courts used language that the limitations statute does not begin to run until the "defendant's culpability" can be ascertained or until the plaintiff knows that a claim exists. However, that language is not precise nor is the appellant's reliance on it. In *Carney*, the court specifically stated: "[P]laintiff's argument that he must first know his legal theory before the statute starts to run is without

■ This is not an accurate statement of the Pennsylvania discovery rule. In *Anthony v. Koppers Co. Inc.*, 284 Pa. Superior Ct. 81, 425 A.2d 428 (1980), *rev'd. on other grounds*, 496 Pa. 119, 436 A.2d 181 (1981), this court adopted a formulation articulated by the Court of Common Pleas of Philadelphia County in *Volpe v. Johns-Manville Corp.*, 4 P.C.R. 290 (Phil.C.P.1980). In essence, this standard compels the factfinder to determine that the statute commences when the medical malpractice plaintiff has knowledge or (and this is crucial to the determination) through the exercise of reasonable diligence should have had knowledge of: (1) his injury; (2) the operative cause of his injury; and, (3) the causative relationship between his injury and the operative conduct.[7] Since the decision in *Anthony*, the *Volpe* formula has been uniformly used by our courts in discovery rule cases. *See e.g., Petri v. Smith*, 307 Pa. Superior Ct. 261, 453 A.2d 342 (1982); *Coyne v. Porter-Hayden Co.*, 286 Pa. Superior Ct. 1, 428 A.2d 208 (1981). *See also, O'Brien v. Eli Lilly & Co.*, 668 F.2d 704 (3d Cir.1981).

The difference in appellant's phrasing of the third element of knowledge, i.e., knowledge of the negligent conduct causing the injury, and *Volpe's* phrasing, i.e., knowledge of the causative relationship between the injury and the operative conduct, is not a mere linguistical variance without substantive meaning. For this reason we must reject appellant's assertion.

foundation." *Id.,* at 575. For cases in the federal courts decided in accordance with the discovery rule standard we apply today *see, O'Brien v. Eli Lilly & Co.,* 668 F.2d 704 (3d Cir.1981); *Grabowski v. Turner & Newall,* 516 F.Supp. 114 (E.D.Pa.1980); *aff'd. DaMato v. Turner & Newall, Ltd.,* 651 F.2d 908 (3d Cir.1981); *Huber v. McElwee-Courbis Construction Co.,* 392 F.Supp. 1379 (E.D.Pa.1974).

7. This analysis was applied in *Petri, supra.* There the plaintiff alleged negligence attending a breach birth performed approximately fourteen years before the suit was filed. Our court relied on the *Volpe* elements to reverse a summary judgment for defendant where the plaintiff knew her son was retarded, knew that forceps had been used to deliver her son, but a factual issue existed as to when she should reasonably have discovered that the use of forceps caused the retardation. *Petri, supra,* 307 Pa.Superior Ct. at 263, 453 A.2d 342.

*Volpe* directly addressed the issue of whether knowledge of negligence is included in the discovery rule and unequivocally held that it is not. Judge Takiff, in *Volpe*, wrote: "Postponing the commencement of the limitations period until he has actually done so [acquired knowledge of the negligence] would nullify the justifiable rationale of the statute of limitations and permit the prosecution of stale claims." [8] With this statement we wholeheartedly agree as our adoption of the *Volpe* formula has previously indicated.

The statute of limitations has as its policies and purposes the stimulation of the prompt pursuit of legal rights and the avoidance of the inconvenience and prejudice resulting from deciding stale cases on stale evidence. Our supreme court stated in *Ulakovic v. Metropolitan Life Insurance Co.*, 339 Pa. 571, 16 A.2d 41 (1940):

> It has always been the policy of the law to expedite litigation and not to encourage long delays. From this fact arose the various statutes of limitations, and the reasons why the law is unfavorable to delayed litigation are self-evident. If any person has a right which he wishes enforced, he should enforce it promptly. The person against whom the right is to be enforced might be greatly prejudiced by plaintiff's delay. Witnesses disappear or remove to distant parts and the entire aspect of the parties on both sides may change with the lapse of time.

*Id.*, 339 Pa. at 575, 16 A.2d at 42. See also, *Anthony v. Koppers Co., Inc.*, 284 Pa.Superior Ct. 81, 106, 425 A.2d 428, 441 (1980), *reversed on other grounds*, 496 Pa. 119, 436 A.2d 181 (1981).

■ It was with these principles in mind that our discovery rule has been fashioned. While undergoing medical treatment and while acting in accordance with the confi-

---

**8.** *See also, Grabowski v. Turner & Newall,* 516 F.Supp. 114 (E.D.Pa. 1980), *affirmed per curiam, DaMato v. Turner & Newall, Ltd:,* 651 F.2d 908 (3d Cir.1981): "In sum we conclude that when a plaintiff knows the cause and source of his injury, his lack of knowledge about the legal basis for a prospective claim will not toll the statute." *Id.,* at 120.

dence and trust inherent in a doctor-patient relationship it is difficult if not impossible to ascertain that the treatment has caused or may be causing an injury. Therefore, our courts find that it would be unfair and unjust to begin the statutory period before the injury is ascertainable. However, in order to promote the policy of avoiding stale claims, the discovery rule must not be read too liberally thereby giving the plaintiff unlimited time in which to act.

■ Thus, once the patient is aware or should reasonably have become aware that medical treatment is causing him personal injury the statute begins and the prospective plaintiff is required to begin doing those things for which the statute of limitations specifically provides time: "an opportunity to select and consult with a lawyer, investigation, initiation of suit, discovery, joinder of additional parties, etc." *Keating v. Zemel,* 281 Pa.Superior Ct. 129, 134 n. 4, 421 A.2d 1181, 1184 n. 4 (1980). It is during this two year period that the medical malpractice plaintiff, like any other plaintiff pursuing any other legal claim, makes the decision whether or not to pursue any legal rights he may possess.

In *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the United States Supreme Court confronted this issue [9] and reached the same conclusion as we do today:

> We thus cannot hold that Congress intended that 'accrual' of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff such as Kubrick, armed with the facts about the harm done to him can protect himself by seeking advice in the medical and legal community. To excuse him from promptly

---

**9.** In *Kubrick, supra,* the Supreme Court reversed a court of appeals decision which held that under the Federal Tort Claims Act, 28 U.S.C.A. § 2401(b), the statute of limitations commenced for a medical malpractice claim when the plaintiff became aware of the legal repercussions flowing from his injury. The Court stated: "[T]he putative malpractice plaintiff must determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make." *Id.* at 123, 100 S.Ct. at 360.

doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute.... *Id.*, at 123, 100 S.Ct. at 360.

Based on the foregoing, therefore, we reject appellant's theory.[10] "[A] potential plaintiff need not have knowledge that he has a cause of action in order for the statute to run.... In the absence of fraud or concealment the statute begins to run when a tort is ascertainable." *Wallace v. Horvath*, 283 Pa.Superior Ct. 179, 423 A.2d 1047, 1050 (1980) (Brosky, J. concurring).

Before we apply the *Volpe* three-tiered test to the facts *sub judice*, we will address appellant's second contention. DeMartino submits that even if this court should find that Dr. Brothman's statement, "whoever did the root-canal wasn't watching what he was doing," was sufficient to alert him as to his injuries, Dr. Brothman's subsequent denial that Dr. Houseman had improperly treated him constitutes fraud or concealment on the part of AEMC and stops AEMC from invoking the bar of the statute of limitations.

■ In *Schaffer v. Larzelere*, 410 Pa. 402, 189 A.2d 267 (1963), our supreme court stated the principle to which appellant is referring:

Under the law of Pennsylvania, it is the duty of one asserting a cause of action against another to use all reasonable diligence to properly inform himself of the facts ... and to institute the suit within the prescribed statutory period: *Patton v. Commonwealth Trust Co.,*

---

**10.** In *Grubb v. Albert Einstein Medical Center,* 255 Pa.Superior Ct. 381, 387 A.2d 480 (1978), this court appeared to have adopted the *Carney* rule of culpability, *supra* n. 6: "The statute begins to run as of the date of the injuries unless, in the exercise of reasonable diligence, the plaintiff could not have ascertained defendant's culpability in the statutory period. When that culpability could not reasonably have been so ascertained, the statute begins to run as of the date it could reasonably have been discovered." *Grubb, supra,* 255 Pa.Superior Ct. at 399–400, 387 A.2d at 489. However in a subsequent case, *Keating v. Zemel,* 281 Pa.Superior Ct. 129, 421 A.2d 1181 (1980), we attempted to interpret *Grubb* in a manner to mean, as we are saying presently, that a malpractice victim is not expected to enforce his claims until he has some reason to believe that medical treatment caused his injury.

*Executor,* 276 Pa. 95, 119 A. 834 (1923); *Turtzo v. Boyer,* 370 Pa. 526, 88 A.2d 884 (1952). Mere mistake, misunderstanding or lack of knowledge is not sufficient to toll the running of the statute: *Ridgway's Account,* 206 Pa. 587, 56 A. 25 (1903); *McEnery v. Metropolitan Life Ins. Co.,* 50 Pa.Dist. & Co. 395 (1944). If, however, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the limitation of the action: *Plazak v. Allegheny Steel Company,* 324 Pa. 422, 188 A. 130 (1936) and *Deemer v. Weaver,* 324 Pa. 85, 187 A. 215 (1936).

*Schaffer, supra,* 410 Pa. at 405, 189 A.2d at 269. Assurances given by a physician which lull a patient into a false sense of security act as "concealment" and toll the statute. *Stein v. Richardson,* 302 Pa.Superior Ct. 124, 448 A.2d 558 (1982), *Barshady v. Schlosser,* 226 Pa.Superior Ct. 260, 264, 313 A.2d 296, 298 (1973) (Hoffman, J., in support of reversal). "The burden of proving the existence of such fraud or concealment is upon the asserting party by evidence that is clear, precise and convincing." *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 93, 204 A.2d 473, 475 (1964).

■ Appellant asserts that when Dr. Brothman refused to continue discussing the apparent problem with the root canal of which he made mention he thereby lulled appellant into a state of acquiescence. By his silence, according to appellant, Dr. Brothman concealed information necessary to give appellant sufficient knowledge to start the running of the statute.[11]

The lower court, in reply to this argument, found that given Dr. Brothman's professional relationship with Dr. Houseman, it would be logical and reasonable for appellant to infer that Brothman was making a hasty attempt to protect a possibly negligent colleague (referring in a foot-

11. Appellant places a great deal of importance on his allegation that Dr. Housman actually said "No" when he asked if treatment had been improper. As it is not a material issue of fact in that it does not change the outcome of our decision the allegation does not require any discussion.

note to the medical "community of silence"). Slip op. at 10. We agree with the lower court that such was a reasonable inference and that Brothman's actions did not amount to concealment.

In *Barshady v. Schlosser,* 226 Pa.Superior Ct. 260, 313 A.2d 296 (1973), appellant suffered severe pain and numbness immediately following ear surgery in April 1961. Her physician assured her that the condition was temporary. She continued her treatment with the same surgeon for two years but when the symptoms did not subside by that time she consulted another physician who discovered her injuries. An equally divided court affirmed a compulsory non-suit against plaintiff-appellant. Judge Hoffman, in an opinion in support of reversal, stated that the allegations of the original surgeon's assurances amounted to concealment. Considering the circumstances of the case Judge Hoffman found that the appellant's reliance on her physician was justified:

> The appellant confronted her surgeon with her symptoms and ailments immediately after the operation. Having absolute confidence in the judgment of her physician, as is the case in many physician-patient relationships, she believed the appellee's statement that the pain was an emotional reaction to surgery and the numbness would be temporary.... We believe that appellant's delay in seeking other medical advice was a reasonable one, prompted by her faith in her physician.

*Id.,* 226 Pa.Superior at 264, 313 A.2d at 298–299.

This reasoning, however, would not lead to a finding of fraudulent concealment under the present circumstances. We can not find that appellant's reliance on Dr. Brothman's refusal to expand on his comment was reasonable or justified. Appellant was not in a situation that was devoid of suspicion. Along with several more months of treatment than he had anticipated, pain, numerous changes in his attending dentist,[12] he had just been told that a serious

12. Although we do not mean to say that any one of these factors is ordinarily sufficient to create the knowledge necessary to start the

condition was caused by someone not watching their work. It is not reasonable,[13] nor are we able to believe that a jury would find it reasonable, to believe that a patient could be lulled into a state of acquiescence after hearing such a comment.

■ Heretofore, we have found that reliance upon the word of one physician when the patient's own common sense should lead one to a different conclusion is unreasonable. In *Armacost v. Winters*, 258 Pa.Superior Ct. 424, 392 A.2d 866 (1978), a minor passenger suffered severe and chronic headaches immediately after a car accident. Her family physician never advised her or her parents of the causal connection between the accident and the headaches. Suit for the injuries was brought more than two years after the accident and the plaintiff pleaded the discovery rule. We held that the physician's failure to advise the minor of the cause of her headaches did not justify a delay in the running of the statute:

> It is not unreasonable to expect plaintiffs to appreciate the possibility of the accident as the triggering factor. The injury was fully known at the time of the accident, and its cause should have been known by a reasonable mind. It is inadequate in this case solely to rely upon one physician's examination and, in essence, failure to pinpoint a certain alleged cause.

*Id.*, 258 Pa.Superior Ct. at 428, 392 A.2d at 868.

Similarly, we must now also hold that it was inadequate to rely solely on Dr. Brothman's subsequent refusal to explain his comment. We find, as a matter of law, that

statute of limitations, all of them together, culminating with Brothman's observation, act as influential factors in determining appellant's state of knowledge.

13. In *Petri v. Smith*, 307 Pa.Superior Ct. 261, 453 A.2d 342 (1982), we applied the Restatement's definition of reasonableness: "those qualities of attention, knowledge, intelligence and judgment which society requires of its members *for the protection of their own interests* and the interests of others" Restatement, (Second), Torts § 283, comment b (emphasis added).

there was no fraud or concealment so as to toll the statute of limitations against this cause of action.

All that remains, therefore, for our decision is to apply to the present set of facts the *Volpe* three-step analysis. Initially, we should make clear that the applicability of the discovery rule is not contested by the parties. It is appellee's assertion that the statute began to run on the day of appellant's visit to Dr. Brothman. Appellant, on the other hand, contends that it was not until a 1979 visit to a previously unconsulted dentist that the statute began to run.

Appellant's analysis of the facts is as follows. He contends that while he was a patient at AEMC he was never given any reason to believe that he was suffering from an injury, but instead believed that the bone erosion and gum perforation diagnosed by Dr. Brothman was simply the natural progression of his disease. He states that as a layman, uneducated in dentistry, he had no reason to believe anything else.

In support of the reasonableness of his belief, appellant cites *Tyminski v. United States*, 481 F.2d 257 (3d Cir.1973):

Reasonable diligence does not require that a person who does not know of the acts constituting malpractice and who has little reason to doubt that his injury remitted from disorder interrupt the care he is receiving to cure his injuries in order to ascertain whether the person providing the care negligently caused his injuries.

*Id.*, at 264.[14]

He then continues to argue that he had no knowledge of the operative cause of his injury. According to appellant, Brothman's apparent nonchalance negated any notice his

**14.** Appellant here refers to the "ongoing treatment" concept which states that the statute of limitations is tolled in a medical malpractice case until such time as the putative plaintiff is no longer under the defendant's care. This is not the rule in Pennsylvania; at most it is only a factor in determining the reasonableness of plaintiff's conduct. *See, Greenberg v. McCabe*, 453 F.Supp. 765 (E.D.Pa.1978), *aff'd.* 594 F.2d 854 (3d Cir.1979), *cert. den., McCabe v. Greenberg*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 51 (1979).

comments may otherwise have provided. Subsequent to that appointment, no other dentist told him of the possibility of negligent treatment until 1979. Therefore, under appellant's analysis, the statute of limitations, as per the discovery rule, began in 1979.

■ Before we embark on our own analysis and explain the faults inherent in appellant's treatment of the facts, we feel compelled to make it clear at the outset that the standard against which the discovery rule is applied is one of reasonable conduct. We evaluate the malpractice plaintiff's conduct in terms of what he *should have known* at a particular time by following a course of reasonable diligence. It is a general principle in our law that if a party has the means of discovery within his power but neglects to use them, his claim will still be barred. *Irrera v. Southeastern Pennsylvania Transportation Authority*, 231 Pa. Superior Ct. 508, 520, 331 A.2d 705, 710–711 (1974). Our court has a duty to apply this principle in a judicious and fair manner to both parties for the statute of limitations protects not only the person who has been wronged but also the wrongdoer. After a certain period of time a wrongdoer should have repose and be spared the inconvenience and prejudice that may result from attempting to defend himself against a stale claim. *Anthony v. Koppers Co., Inc.*, 284 Pa.Superior Ct. 81, 105–107, 425 A.2d 428, 441 (1980), *rev'd. on other grounds*, 496 Pa. 119, 436 A.2d 181 (1981).

Thus, with these precepts in mind we turn to the present factual predicament.

■ The manner in which appellant applies the *Volpe* elements to the facts is incorrect. When Dr. Brothman told him of the gum perforation and the bone erosion, he then had knowledge of his injury, though at that particular moment the knowledge of the cause of the injury still eluded him. However, when Dr. Brothman responded to appellant's direct query as to the cause, saying someone must not have been watching what he was doing, the appellant was then cognitive of the operative cause and the relationship between the cause and the injury. While it may be true that, due to Dr. Brothman's later reluctance to

discuss the matter appellant could not be *positive* of what had occurred, he was no longer oblivious to the possibility that there may be more to his persistent problems than a natural progression of his disease. He had sufficient empirical information at his disposal to begin an investigation into suspicions which should reasonably have arisen out of Dr. Brothman's observations.[15] We, therefore, find that the conversation of May 1977 with Dr. Brothman produced sufficient information to satisfy the *Volpe* test and trigger the statute of limitations against appellant's medical malpractice claim.[16]

■ In order to affirm the order of summary judgment, however, we must be able to find that there are no genuine

15. *See also, O'Brien v. Eli Lilly & Co.,* 668 F.2d 704, 709 (3d Cir.1981), where appellant developed cancer caused by a drug administered to her mother during her 1956 pregnancy. In February 1976 the plaintiff appellant read a magazine article connecting the drug with cancer. She filed suit against the manufacturer in 1979. The Third Circuit Court of Appeals, applying *Volpe,* upheld a grant of summary judgment for Eli Lilly & Co.:

> Measuring the instant facts against this three-party standard we are persuaded that in 1976, when [plaintiff-appellant] was told that she had had cancer, she acquired knowledge of her injury; and that when she read the *Newsweek* article and consulted with Dr. Mituka she acquired knowledge from which by the exercise of due diligence, she could have discovered both the alleged operative cause of her injury—her mother's injestion of DES—and the causal relationship between the operative conduct and her injury.... The acquisition of actual knowledge, however, is not the trigger for the running of the limitations period under Pennsylvania law. The correct inquiry is not whether she had actual knowledge of all three Volpe elements before 1979, but 'whether [she] should reasonably be charged with that knowledge before that time.'

*Id.,* at 709.

16. The fact that appellant may not have known the identity of the dentist who performed the work is not relevant to the start of the limitations statute. In *Keating v. Zemel,* 281 Pa.Superior Ct. 129, 133–34 n. 4, 421 A.2d 1181, 1183–84 n. 4 (1980), we stated that once a victim is put on notice that there may be legal responsibility on the part of another or others, with the only outstanding problem being the identity of the culpable party, the statute's commencement could not be delayed: "[W]e are unable to find Pennsylvania cases which allow extension of the statute of limitations after an ascertainable tortious episode where there has not been fraud or concealment." *Id.,* 281 Pa.Superior Ct. at 133–34 n. 4, 421 A.2d at 1183–84 n. 4.

issues of material fact over which reasonable minds may differ. The question of whether a plaintiff has exercised due diligence in discovering the incidence of his injury is usually a jury question. *Taylor v. Tukanowicz*, 290 Pa.Superior Ct. 581, 586, 435 A.2d 181, 183 (1981). However, as we stated in *Anthony v. Koppers Co., Inc., supra*, there are cases where this issue may be determined as a matter of law:

> In many cases, perhaps in most, the issue of what a plaintiff reasonably should have discovered is not a question that may be resolved as a matter of law at the summary judgment stage but instead is a question for the jury. *See Smith v. Bell Telephone Co.*, [397 Pa. 134, 153 A.2d 477 (1959)], *supra; Armacost v. Winters, supra; Bayless v. Philadelphia National League Club*, [579 F.2d 37 (3d Cir.1978)], *supra.* Sometimes a case will arise where the facts will be undisputed and will lead unerringly to the conclusion that the length of time it took the plaintiff to discover the injury or its cause was unreasonable as a matter of law. *See Aberman v. Funk*, [278 Pa.Super. 385, 420 A.2d 594 (1980)], *supra.* In such a case summary judgment may be appropriate.

*Id.*, 284 Pa.Superior Ct. at 110, 425 A.2d at 443.

Instantly, there is no material dispute to be resolved by the factfinder. The question is solely whether from the facts presented a jury could reasonably conclude that appellant, if he had exercised due diligence, could not have discovered the operative cause of his injury and the causal relationship in 1977. *See, O'Brien v. Eli Lilly & Co.*, 668 F.2d 704 (3d Cir.1981).

 We remain convinced, giving the plaintiff the benefit of all reasonable inferences, that the jury could not have found that Dr. Brothman's observation did not provide sufficient notice of possible wrongdoing and that through the exercise of reasonable diligence suit could not have been brought within two years. This is even more obvious given the cause and effect framework in which that comment was delivered. The statement was plain and unambiguous when

expressed and would cause the ordinarily prudent person to be shocked and distraught especially after the prolonged and extensive treatment through which appellant had already been put.

We are also persuaded of the appropriateness of the summary judgment by the following admission appellant made in his letter to the Dental Society:

> The above incidents made it clear to me that remaining a patient at Albert Einstein was bringing no progress to my case and as the above example shows, conditions were in some cases worse than when I began as a patient. Since February, 1977, Dr. Sobel was preparing crowns for my four top anterior teeth. In July, 1977, these crowns were back from the lab, however, my new Resident, Dr. Cohen, did not have any time to fit them on. I therefore informed Albert Einstein that I was leaving their care and that I would have whatever work that I still needed after being their patient for almost four years, completed elsewhere. I next visited the clinic to adjust my bill with them. I was informed at the clinic that I would not be charged for either the extraction or the hemisection since they admitted both of these cases were a result of their 'mishandling'. . . .

This statement makes it clear that the appellant had been supplied with enough information so as to be able to pursue the possibility that he had been a victim of malpractice long before the 1979 incident which he alleges to have been his first notice of possible mistreatment.

 We also find that the alleged failure of other physicians to inform the appellant of the cause of his dental problems is irrelevant to the start of the statute. Relying on this alone creates a case, at best, of mistake, misunderstanding or lack of knowledge which does not toll the running of the statute of limitations.[17] *Schaffer v. Larzel-*

17. *See also, United States v. Kubrick,* 444 U.S. 111, 123, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979):

> If there exists in the community a generally applicable standard of care with respect to the treatment of his ailment, we see no reason

*ere,* 410 Pa. 402, 189 A.2d 267 (1963); *Keating v. Zemel,* 281 Pa.Superior Ct. 129, 421 A.2d 1181 (1980). We can only conclude that appellant unreasonably delayed in investigating the improper discharge of services by appellee. Every person must exercise reasonable diligence in the protection of their own personal interests and well-being and in the pursuit of their legal rights against others.

Therefore, we affirm the lower court's order of summary judgment in favor of appellee Albert Einstein Medical Center on the basis of the bar of the statute of limitations.

Order affirmed.

to suppose that competent advice would not be available to the plaintiff as to whether his treatment conformed to that standard. If advised that he has been wronged, he may promptly bring suit. If completely advised to the contrary, he may be dissuaded, as he should be, from pressing a baseless claim. Of course he may be incompetently advised or the medical community may be divided on the crucial issue of negligence.... But however or even whether he is advised, the putative malpractice plaintiff must determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make. If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury.