578 A.2d 970

**Elizabeth MacCAIN and William MacCain, Appellants,**

v.

**MONTGOMERY HOSPITAL, John E. DeVenney, M.D., Robert Belasco, M.D., and Bruce J. Menkowitz, M.D.**

Superior Court of Pennsylvania.

Argued June 21, 1990.

Filed Aug. 15, 1990.

Francis X. Nolan, Philadelphia, for appellants.

Mary T. Trainor, Norristown, for Montgomery Hosp., appellee.

Joseph M. Hoeffel, Norristown, for Robert Belasco, M.D., appellee.

Before ROWLEY, McEWEN and JOHNSON, JJ.

ROWLEY, Judge:

Elizabeth and William MacCain appeal from the trial court's order granting Summary Judgment in favor of appellees, Montgomery Hospital, John E. DeVenney, and Robert Belasco.[1] Appellants raise the following three issues on this appeal: (1) whether the trial court erred in finding no issue of material fact where the opinion of three doctors contradicted a fourth doctor and where the trial court attributed to plaintiff, only the fourth doctor's opinion as elicited through plaintiff's lips rather than through the testimony of the fourth doctor and where the trial court charged plaintiff with greater knowledge than her three treating physicians; (2) whether the trial court erred in deciding as a matter of law that the statute of limitations had run where the uncontradicted affidavit of plaintiff revealed that she was unable, due to physical and emotional complications of surgery, to learn that she had suffered an "injury" that was proximately caused by another, where plaintiff's conduct presented issues of the reasonableness which under the most recent cases mandated resolution by a jury and where the decisions of this court were conflicting on the issues; and (3) whether the trial court erred in applying the statute of limitations where the evidence clearly revealed an estoppel in that Dr. Belasco concealed information from the plaintiff until his deposition in 1988. We have reviewed the record and affirm the grant of Summary Judgment.

The facts giving rise to this case commenced on October 10, 1983 when Mrs. MacCain was admitted to the Montgomery Hospital for an orthopedic procedure on her right

1. Because the thirty day period after the filing of the praecipe for argument had not expired with respect to defendant Bruce J. Menkowitz' Motion for Summary Judgment, the trial court did not rule on that motion and Menkowitz is not a party to this appeal.

elbow. Dr. Menkowitz was the orthopedic surgeon who was to perform the procedure. Dr. Menkowitz requested a consultation by a cardiologist, Dr. Belasco, to determine whether Mrs. MacCain posed a surgical risk. Mrs. MacCain was first examined by a physician's assistant who noticed a "right breast mass" during the examination. Dr. Belasco then examined Mrs. MacCain. He found no breast mass, but because of the assistant's findings, he ordered a mammogram. The mammogram was taken on October 10, and based on its results, Dr. DeVenney, the radiologist, typed the following report:

Routine views of both breasts reveals what appears to be residual breast tissue in the upper middle and upper outer quadrant. I do not see anything that I could call a discrete mass. However, there are multiple small microcalcifications within this tissue and I cannot absolutely exclude the possibility of malignancy within this region. Follow up is suggested.

Dr. Belasco subsequently made a notation in Mrs. MacCain's chart that the mammogram was negative and he told Mrs. MacCain that everything was fine.

Mrs. MacCain's surgery was performed and she was released from Montgomery Hospital on October 15, 1983.

During the ensuing months, Mrs. MacCain noticed that the lump in her breast was increasing in size and she consulted her gynecologist, Dr. Pedano, in February, 1984. Dr. Pedano examined the lump and indicated that he "did not like the looks of it." Dr. Pedano instructed Mrs. MacCain to return in six months.

In September, 1984, when Mrs. MacCain returned to Dr. Pedano, the lump had grown larger. On September 25, 1984, Mrs. MacCain had a second mammogram taken. Dr. Pedano compared the two mammograms and recommended a biopsy.

Mrs. MacCain desired a second opinion and she went to Dr. Whitenack in October, 1984. Dr. Whitenack confirmed Dr. Pedano's recommendation. Following a biopsy, Mrs.

MacCain underwent a modified radical mastectomy on October 5, 1984.

Appellants instituted the present action on November 21, 1986 against Montgomery Hospital, Dr. DeVenney, Dr. Belasco, and Dr. Menkowitz. Appellees filed separate Motions for Summary Judgment asserting that appellants' claims were barred by the statute of limitations. On November 6, 1989, the trial court granted these motions and the MacCains filed this appeal.

■■■ Pa.R.C.P. 1035(b) provides the following:
The [summary] judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In deciding a motion for summary judgment, the court must resolve all facts in the light most favorable to the non-moving party and resolve all doubts as to the existence of material facts against the moving party. *Levenson v. Souser*, 384 Pa.Super. 132, 557 A.2d 1081 (1989). Furthermore, summary judgment may be entered only in cases that are free from doubt. *Dunn v. Teti*, 280 Pa.Super. 399, 421 A.2d 782 (1980). Finally, a trial court's grant of summary judgment will only be reversed if there has been an error of law or a clear abuse of discretion. *Jones v. Keystone Insurance Co.*, 364 Pa.Super. 318, 528 A.2d 177 (1987), *allocatur denied*, 518 Pa. 613, 540 A.2d 535 (1988).

■■■ Under 42 Pa.C.S.A. § 5524(2), an action to recover damages for personal injuries is governed by a two-year statute of limitations. Generally, the two-year period begins to run on the date the injury is sustained. However, when an injury is not readily apparent, the discovery rule applies. *Stauffer v. Eversole*, 385 Pa.Super. 317, 560 A.2d 816 (1989). Under the discovery rule, the two-year time period is tolled and does not begin to run until the plaintiff knows, or in the exercise of reasonable diligence should

have known, (1) that he has been injured, and (2) that his injury has been caused by another's conduct. *Levenson, supra.*

Applying the above principles to the present case, we find that appellants' claim is barred by the statute of limitations and that the trial court was correct in granting summary judgment.

After Mrs. MacCain was told that her mammogram was normal and that she had nothing to worry about, she admitted that she felt the lump increasing in size. In fact, she went to Dr. Pedano, her gynecologist, four months after the first mammogram was taken in order to have the lump checked. He told her he did "not like the looks of it" and instructed her to return in six months. When she did return in September, 1984, the lump had grown larger and Dr. Pedano recommended that Mrs. MacCain undergo a biopsy.

Mrs. MacCain then sought a second opinion from Dr. Whitenack. When Mrs. MacCain was deposed, she stated that she was told by Dr. Whitenack that he observed carcinoma on the 1983 mammogram as well as the 1984 mammogram and that maybe Dr. Belasco did not see it or did not look at the mammogram right. She now argues that this statement from Dr. Whitenack was not sufficient to alert her to the existence of an injury. However, a plaintiff need not know the precise medical cause of the injury for the statute of limitations to begin running; she need only to have known that she was injured. *Groover v. Riddle Memorial Hospital,* 357 Pa.Super. 420, 516 A.2d 53 (1986), *allocatur denied,* 515 Pa. 600, 528 A.2d 957 (1987). Furthermore, a plaintiff need not know that she has been injured by someone's negligent conduct for the limitations period to begin running. *Bickford v. Joson,* 368 Pa.Super. 211, 533 A.2d 1029 (1987), *allocatur denied,* 518 Pa. 647, 544 A.2d 959 (1988). There is no question that at the time she was told she had cancer, Mrs. MacCain should have been alerted to the fact that the earlier mammogram had been misread or that she had been misinformed.

Appellants also claim that the trial court erred in finding no issue of material fact where Dr. Whitenack's opinion that he could see carcinoma on the first mammogram contradicted Dr. Belasco's and Dr. DeVenney's assertions that carcinoma was not present on the first mammogram. Furthermore, appellants assert that the trial court erred in relying on Mrs. MacCain's testimony about what Dr. Whitenack said. The fact that Dr. Whitenack's opinion contradicted the opinion of the other doctors, while relevant to the underlying issue of liability, is not a material fact with respect to the statute of limitations issue. Furthermore, even without Dr. Whitenack's statement that carcinoma was present on the first mammogram, Mrs. MacCain knew in October of 1984 that she had cancer and she also knew that Dr. Belasco had told her she did not have cancer in October of 1983. Therefore, she should have been aware that a mistake was made with regard to the first mammogram.

The facts of *Groover, supra,* are similar to the present case. In *Groover,* the plaintiff received an injection in her back in 1979. She immediately felt pain and she soon began to suffer loss of control in her right leg. She saw various doctors over the next few years in response to the problems with her leg. In June, 1983, a doctor determined that the injection which she received in 1979 had caused injury to the sciatic nerve and that this was the source of her problems. The plaintiff then filed suit in September, 1983. The trial court granted summary judgment, holding that the statute of limitations barred plaintiff's claim. The Superior Court affirmed and emphasized that the plaintiff immediately started having pain after the injection and that she should have known that she had suffered an injury. The Superior Court held that the plaintiff need not have known the precise medical cause of her injury for the statute of limitations to begin running. She need only to have known that she was injured. *Id.*

In the present case, by February of 1984, Mrs. MacCain was aware that the lump in her breast was growing in size

and she was told by a doctor that there may be a problem. Finally, in the beginning of October, 1984, she was told that her mammogram indicated carcinoma and that a biopsy would have to be performed. On October 5, she underwent a mastectomy. By this time, she should have realized that she had suffered an injury.

Appellants also argue that the trial court erred in charging Mrs. MacCain with greater knowledge than the physicians who treated her in October of 1983. However, the trial court did not hold that Mrs. MacCain should have known about her injury in October of 1983. The trial court held that she should have known that she was injured by October of 1984 when she learned that she had cancer. Therefore, the trial court did not charge Mrs. MacCain with greater knowledge than Drs. Belasco and DeVenney.

Appellants also contend that Mrs. MacCain was unable to learn that she had suffered an injury because of the physical and emotional complications of surgery and that the question of the reasonableness of her conduct should have been resolved by a jury as held in *Corbett v. Weisband,* 380 Pa.Super. 292, 551 A.2d 1059 (1988). The facts in *Corbett,* wherein the plaintiff had suffered serious knee pains for years prior to the allegedly negligent treatment, are significantly different from the present case. In *Corbett,* since the plaintiff had continually suffered pain in her knee for many years, the fact that she continued to suffer pain after medical treatment did not necessarily put her on notice that she had been injured by the treatment. She had no reason to suspect that the pain she felt was not simply a continuation of the pain she had been suffering for years.

In the present case, Mrs. MacCain first felt the lump in her breast shortly before the first mammogram was taken. As the lump continued to grow and as she learned that in fact it was cancerous, she had no reason, as Mrs. Corbett had, not to suspect that the original report of Dr. Belasco may have been erroneous. We therefore find *Corbett* to be inapplicable to the facts of this case.

Moreover, while it is true that in most cases the question of what a plaintiff should reasonably have discovered is a factual determination that should be left to the jury, in some cases "the facts will be undisputed and will lead unerringly to the conclusion that the length of time it took a plaintiff to discover the injury or its cause was unreasonable as a matter of law." *Anthony v. Koppers Co., Inc.,* 284 Pa.Super. 81, 425 A.2d 428, *rev'd on other grounds,* 496 Pa. 119, 436 A.2d 181 (1981). In such cases, summary judgment is appropriate. *Id.*

While we sympathize with appellants' situation, we still must find, as a matter of law, that she should have known that she was injured by, at least, October of 1984 when she was told that she had cancer. For months, Mrs. MacCain was concerned about the lump in her breast. She felt the lump growing larger and was told by her doctor that a problem might exist. In October of 1984, Dr. Whitenack told her that the second mammogram showed carcinoma. On October 5, 1984, this diagnosis was confirmed by the biopsy. At this point, any suspicion of cancer had been positively confirmed. Mrs. MacCain should have been aware that the earlier mammogram had been misread or that she had been misinformed. There is no issue of material fact for the jury to consider and summary judgment was appropriate.

■ Appellants also argue that the trial court erred in applying the statute of limitations where the evidence reveals an estoppel in that Dr. Belasco concealed information from the plaintiff until his deposition in 1988.[2] Appellants claim that what was concealed from them was the fact that Dr. Belasco never looked at the mammogram or Dr. DeVenney's report.

In some cases, the statute of limitations will be tolled when a physician conceals information from the plaintiff

---

2. Although this issue was not raised in appellant's statement of matters complained of, the trial court addressed it, albeit in a footnote. The omission did not interfere with our ability to exercise appellate review; therefore we address the merits of the issue. *See Commonwealth v. Van Jordon,* 310 Pa.Super. 516, 456 A.2d 1055 (1983).

and the plaintiff is lulled into a false sense of security. *DeMartino v. Albert Einstein Medical Center, N.D.*, 313 Pa.Super. 492, 460 A.2d 295 (1983). However, "reliance upon the word of one physician when the patient's own common sense should lead one to a different conclusion is unreasonable." *Id.*, 313 Pa.Superior Ct. at 506, 460 A.2d at 302.

It is uncontradicted that Mrs. MacCain was concerned about the lump in her breast even after Dr. Belasco informed her that there was nothing to worry about. She noticed that it was increasing in size and she went to her gynecologist to have it examined. In this situation, it was not reasonable for Mrs. MacCain to have relied on Dr. Belasco's opinion when she herself felt that the lump was increasing in size and when she was informed by her own doctor that there could be a problem.

Finally, we do not agree with appellants' contention that the trial court erred in deciding that the statute of limitations had run when the decisions of the Superior Court were conflicting on the issues. To commence the running of the statute of limitations, a plaintiff must know, or in the exercise of reasonable diligence should have known, that he has been injured, and that this injury has been caused by another's conduct. *Levenson, supra.* A plaintiff need not know that he has a cause of action for the statute of limitations period to begin running. *DeMartino, supra.*

For the above reasons, appellant's claim is barred by the statute of limitations as a matter of law.

The trial court's grant of Summary Judgment is affirmed.