## Krevitz v. City of Philadelphia

*Hy Mayerson*, for plaintiff.
*David Soltz*, for defendant City of Philadelphia.
*Francis P. Devine III* and *W. Scott Armington*, for defendant Towmotor Corp.

KLEIN, R.B., *J.*, July 8, 1992—

## SUMMARY

On August 22, 1978, Edward Krevitz, a young executive, was killed when a forklift he was operating overturned while he was maneuvering it on a city of Philadelphia street behind his place of business.

Sandra Krevitz, representing the estate, sued the city, alleging that the street was repaved defectively, creating a soft spot that led to the overturn. Plaintiff's counsel wrote a letter to the forklift distributor complaining that the forklift was defective, but did not attempt to sue the forklift distributor or manufacturer until many years after the statute of limitations ran. The city joined Towmotor Corp. after the statute of limitations had run for the plaintiff

against Towmotor. The city made the claim that the Towmotor forklift was defective, leading to the rollover and Mr. Krevitz's death.

After a 16-day jury trial, held from May 6 through May 28, 1986, the jury held that the city was not negligent. Since plaintiff had no direct claim against Towmotor, the jury did not reach the issue of whether Towmotor was negligent.

Krevitz at oral argument abandoned any argument that there was any error in the trial which resulted in the verdict exonerating the city from responsibility.

Instead, Krevitz claimed that there was a pattern of fraud on the part of Towmotor to conceal the danger of its forklift, and that therefore the court erred when it denied a motion to allow the plaintiff to amend her complaint to add Towmotor as a defendant several years after the statute of limitations had run. Krevitz further claims that there is new evidence that adds to the reasons stated in her motion to amend which shows that Towmotor fraudulently concealed evidence that it possessed as to the danger of the forklift.

Under the law of Pennsylvania, the facts on which Krevitz relies to show concealment by Towmotor, even if believed, are not sufficient to toll the running of the statute of limitations.

## ABANDONED CLAIMS OF ERROR

*Krevitz has abandoned any claims of error in the case against the city of Philadelphia.*

Although the initial post-verdict motions claimed error resulting in the verdict that the city of Philadelphia was free from negligence, these issues were never briefed. At the oral argument, plaintiff specifically abandoned these arguments. The attorney for the city was excused from

the courtroom once it was determined that there no longer was any claim that the verdict in favor of the city was in any way improper.

## POSSIBILITY OF DEFECT KNOWABLE

*The possibility of a defective forklift was knowable immediately after the accident.*

Despite the claims that Towmotor had concealed other rollover accidents, this concealment would not prevent plaintiff from conducting her own investigation which would have discovered any defect.

A. *The Plaintiff Could and Did Immediately Consider the Instability of the Forklift as a Possible Cause of the Accident.*

Edward Krevitz died when a forklift rolled over while he was operating it on a city street. There were a limited number of possibilities causing the accident. The accident had to be caused by one or more of the following three circumstances:

(a) operator error;

(b) a defect in the street; and

(c) a defect in the forklift.

Not only was the plaintiff aware of the possible defect in the street, but she was also aware of the possibility of a defect in the forklift. In fact, in a letter attached as "Exhibit B" to Towmotor's answer to plaintiff's petition to amend the complaint, counsel for Krevitz wrote to the distributor of the forklift, and claimed that Mr. Krevitz died "as a result of being crushed by equipment purchased from you wherein the design was of a dangerous and defective nature so as to causally contribute to his death." The letter was written on October 18, 1978, within two years of the accident.

The actual forklift remained in the possession of the Krevitz business. Plaintiff was free to have her own expert engineers examine the forklift to determine whether or not its design created a dangerous circumstance. Whether or not there were other rollovers might have had some bearing on the issue, but essentially an expert's evaluation would be the key to plaintiff's success in litigation.

Counsel for Krevitz claimed that Towmotor did its best to conceal known dangers of the forklift. It is noted that this issue is hotly contested by Towmotor. More significantly, plaintiff cannot rely on the defendant to make out plaintiff's case. In an adversary system, one can expect the other side to paint the picture in a light most favorable to it.

Plaintiff had the obligation to examine the forklift to determine whether or not an engineer would think it was dangerous. The engineer is free to conduct his or her own tests, and is not bound by any standards or tests that had been conducted by the defendant.

It seems more likely that there was a strategic decision to focus the case on the city to keep it simple rather than engaging in the legal warfare that did develop when the focus was directed against the forklift company.

B. *The City had No Problem Protecting Its Cause of Action Against Towmotor.*

The city had no more information available to it than did Krevitz. Within two years of the date it was served, the city was able to secure an agreement from Towmotor to allow joinder at a later time if its investigation showed liability on the part of Towmotor. It was able to file suit and protect its rights without the volumes of information about forklifts produced by plaintiff's counsel, Hy Mayerson. The city secured an extension of time,

and then had an expert evaluate the forklifts to opine that it was unstable. Krevitz was certainly able to follow a similar course of action if he had not made a strategic decision not to sue Towmotor.

The city's engineer, Daniel Pacheco, who testified at trial, examined the forklift, then plotted the "stability arch" and the "pivots." In essence, the rear axle pivots at the center to allow the forklift to go over bumps and make sharp turns. However, this creates a "triangle" center of balance, running from the two front wheels to the center of the rear axle where the "pivot" is located. Mr. Pacheco gave the opinion that this caused instability. He further said that this construction gave the illusion that the forklift was more stable with a light load than it was with a heavy load, when in fact, the reverse was true. He also said the forklift could have had a seat belt or wing chairs, or a wider axle. As can be seen from this testimony, an expert did not have to rely on information supplied by Towmotor to come to a conclusion. All he needed to do was to see the forklift, or to review the specification sheets. The testimony of this witness at trial demonstrates that plaintiff, using due diligence, could have obtained enough information to realize that a cause of action lay against Towmotor.

## BURDEN OF PROOF NOT MET

*The plaintiff has not met her heavy burden of proof to show that Towmotor prevented her from making inquiry to discover her cause of action against Towmotor.*

A. *Plaintiff was Not Precluded from Making Her Own Investigation.*

Krevitz claims that Towmotor and the forklift industry acting together were deceptive in convincing the public that forklifts were safe. The claim is that the engineers

knew there was a stability problem because of an "articulated" axle (an axle that pivots in the middle to absorb bumps); knew there was a danger of having the driver "mousetrapped" in a rollover; adjusted the test for safety by using a slope just below the angle where the lift would turn over; quickly destroyed records of accidents; did not supply a seat belt to avoid creating suspicion, etc. In other words, the claim is that Towmotor and the forklift industry did not reveal what they knew about the dangers of forklift rollovers.

Plaintiffs cannot expect the defendants to do their investigation and make out their case for them. Even if the forklift manufacturers did not acknowledge responsibility, tried their best to hide the dangers, and indicated that the machines were safe, this does not stop plaintiff from making investigations of her own. Defendants generally do not immediately confess responsibility. The kind of fraud that tolls the statute of limitations is fraud that would discourage or prevent inquiry. Nothing made plaintiffs believe every word the defendants said. They were free to examine and test the forklift as did the city engineer.

For example, in malpractice cases, the statute of limitations is not tolled merely because the doctor responds to the plaintiff that he did everything carefully and the injury was just a "bad result." Otherwise, there hardly every would be a statute of limitations defense in malpractice cases.

Moreover, the plaintiff never directly contacted the manufacturer for information in this case. The only letter was sent to the distributor. The claim is not of any specific fraud by Towmotor addressed to plaintiff during the two years after the accident, but only general fraud directed to plaintiffs and lawyers as a whole.

## B. *The Plaintiff Must Prove by Clear and Convincing Evidence that Defendant's Fraud Caused the Plaintiff to Relax Her Vigilance and Stop Her Inquiry.*

The general law discussing the circumstances when fraud by a defendant tolls the statute of limitations has been set forth in a number of cases, including those cited by Krevitz. Quoting the earlier Supreme Court case of *Schaffer v. Larzelere,* 410 Pa. 402, 189 A.2d 267 (1963), the Superior Court in *DeMartino v. Albert Einstein Medical Center,* 313 Pa. Super. 492, 503, 460 A.2d 295, 301 (1983), said the following:

"Under the law of Pennsylvania, it is the duty of one asserting a cause of action against another to use all reasonable diligence to properly inform himself of the facts ... and to institute the suit within the prescribed statutory period. Mere mistake, misunderstanding or lack of knowledge is not sufficient to toll the running of the statute. If however, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the limitation of action."

As the Supreme Court said in *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 93, 204 A.2d 473, 475 (1964), "The burden of proving the existence of such fraud or concealment is upon the asserting party by evidence that is clear, precise and convincing."

*Northampton Community College v. Dow Chemical,* 389 Pa. Super. 11, 566 A.2d 591 (1989), *aff'd,* 528 Pa. 502, 598 A.2d 1288 (1991) is similar to the instant case. There was a problem with cracks in the masonry of the college. The college let the statute of limitations run against Dow. Dow raised the statute of limitations in a summary judgment motion, and the college argued that since Dow actively concealed the harmful qualities of

its "Sarabond," it was estopped from raising the statute of limitations. In 1981, Dow issued a report saying that the building was sound and cracks were caused by freeze-thaw conditions. Earlier, Dow had indicated that the Sarabond might have created the problem and suggested an independent investigation. The court said that a disclaimer of liability was not concealment. Since the stability of the forklift was suspect from the inception, any denial of liability by Towmotor likewise cannot be considered concealment or fraud.

In *DeMartino*, the plaintiff had trouble with dental work. The defendant dentist's partner indicated that there might have been a problem created by the dentist. Nonetheless, plaintiff did not file suit until 28 months later when he went to another dentist. Although the partner refused to discuss the case later, and may have later denied that the defendant did anything wrong, the court held that this did not amount to fraud. *DeMartino* at 505, 460 A.2d at 302.

In referring to the "discovery" rule—a test less stringent than a fraud test—the Superior Court said, "However, in order to promote the policy of avoiding stale claims, the discovery rule must not be read too liberally thereby giving the plaintiff unlimited time in which to act." *De-Martino* at 502, 460 A.2d at 300. As the court said when referring to the facts:

"Appellant was not in a situation that was devoid of suspicion. Along with several more months of treatment than he had anticipated, pain, numerous changes in his attending dentist, he had just been told that a serious condition was caused by someone not watching their work. It is not reasonable nor are we able to believe that a jury would find it reasonable, to believe that a patient could be lulled into a state of acquiescence after hearing

such a comment." *DeMartino* at 505-506, 460 A.2d at 302.

In *Wible v. Apanowicz*, 306 Pa. Super. 262, 452 A.2d 545 (1982), the defendant gave incorrect addresses to the police investigating the auto accident. The court said this was not enough to cause the plaintiff to relax his or her vigilance or deviate from a right of inquiry. *Wible* at 268, 452 A.2d at 547.

Krevitz in this case was suspicious of the forklift's stability. That accounts for the letter to the distributor, written by counsel within the period of the statute of limitations. No pre-complaint discovery was ordered. As noted at oral argument, once the forklift defendants were joined, this court was directly involved in the discovery process for many months, going so far as to attend depositions to arbitrate arguments between counsel and speed the process. Plaintiff need not have relied on the "work" given out by the industry and discontinued the investigation into the stability of the forklift. Once plaintiff and her counsel had a reasonable suspicion, they had to exercise due diligence to pursue the matter. Due diligence would at least include having the forklift design examined by a responsible expert.

The following cases by plaintiff do not advance her position.

In *Dudley v. W.C.A.B. (Township of Marple)*, 80 Pa. Commw. 233, 471 A.2d 169 (1984), *aff'd per curiam*, 510 Pa. 283, 507 A.2d 388 (1986), the township had the plaintiff fill out a worker's compensation form and led him to believe they had filed it for him. Therefore, the plaintiff did not file his own form. Since defendant lulled the plaintiff into believing the filing was already done, the statute of limitation was not a bar. It is clear in the instant case that Krevitz knew that time on the statute was running.

In *Nesbitt v. Erie Coach Co.,* 410 Pa. 89, 204 A.2d 473 (1964), the court held the statute of limitations would be tolled under the following circumstances. An insurance adjuster repeatedly told an uncounseled plaintiff that her case would be settled by the carrier as soon as the extent of her injuries were determined, and dissuaded her from hiring an attorney, suggesting that she not spend the money since the company had not refused payment. The adjuster concealed the fact that the carrier was claiming there was no liability. This is far different from the instant case. To this day, Towmotor denies that its forklifts are unstable and defends charges of instability in courts around the country. Towmotor does not now and never has acknowledged liability to Krevitz.

In *McNair v. Weikers,* 300 Pa. Super. 379, 446 A.2d 905 (1982), plaintiff did not file suit on a claim that her husband's death was caused by improper administration of blood pressure medicine until after the statute of limitations expired. This argument was rejected, because if there was any "concealment" on the chart, it was on the part of the nurses, not the doctors who were defendants. Because the court held that any concealment must be by the adversary to toll the statute of limitations, it never reached the issue as to whether the information on the chart would constitute the kind of fraud that would toll that statute.

It is true that Pennsylvania has adopted the "discovery rule" to allow plaintiffs to file suit under some circumstances even if the mechanical two-year statute of limitations has run. However, the only time the discovery rule applies to toll the statute of limitations is when the plaintiff could not know of the cause of the injury when *exercising reasonable diligence.* See *Cathcart v. Keene Industrial Insulation,* 324 Pa. Super. 123, 471 A.2d 493 (1984). As pointed out, whatever Towmotor did, if plain-

tiff had been diligent and had a skilled engineer examine the forklift, that engineer could have arrived at the same conclusion as did Mr. Pacheco.

C. *The "Discovery" Rule Does Not Apply in Death Cases. Plaintiff Must Show Actual Fraud Inducing Her to Stop Her Investigation.*

In death cases, lack of discovery is not enough to toll the statute of limitations. As the Superior Court pointed out in *Gravinese v. Johns-Manville Corp.,* 324 Pa. Super. 432, 471 A.2d 1233 (1984), "In general, this requires that a defendant has done something amounting to an affirmative inducement to plaintiff to delay bringing the action." Any fraud must be proven by clear, precise and convincing evidence.

While at the time of the motion to amend in 1986, this court thought the discovery rule applied to wrongful death actions based on *Pastierik v. Duquesne Light Co.,* 341 Pa. Super. 320, 491 A.2d 841 (1985). *Pastierik* was reversed by the Supreme Court. *Pastierik,* 514 Pa. 517, 526 A.2d 323 (1987). Therefore, the standard is even more strict than presumed by the court when denying the motion to amend. In this case, by due diligence (referring the case to an engineer), the plaintiff could have discovered any defects in the forklift. Therefore, there would be no tolling of the statute because the evidence was not learned until later. The only way plaintiff would have a cause of action against Towmotor after missing the statute of limitations deadline was to show by clear and convincing evidence that Towmotor cut off her inquiry. Under these facts, nothing prevented plaintiff from making inquiry as the city did.

In essence, the voluminous documents filed by Mr. Mayerson, counsel for Krevitz, claim that Towmotor failed to reply to depositions in other cases where forklifts rolled

over, created a fraudulent test to make the product look safe when it was not, and otherwise tried to conceal the forklift's propensity to roll over and the inadequacies of the warnings on the forklift.

Much of this theory, if supported, might justify a new trial if the issue of Towmotor's negligence had been decided in favor of Towmotor at trial. However, that is not the situation in this case. Much of this "deception" took place many years after the statute of limitations ran. There is nothing in the volumes of documents submitted by Mr. Mayerson that would have discouraged the plaintiff from having an engineer examine the forklift right after the accident.

Because the plaintiff did not timely file a complaint against Towmotor, the issue of Towmotor's negligence never reached the jury. While Mr. Mayerson railed mightily against Towmotor at the trial, all this did was make it appear less likely that the city was negligent. The more Mr. Mayerson proved the instability of the forklift, the less the soft spot in the highway seemed to contribute to the accident. Unless the city was negligent, Krevitz had no case. The great amount of discovery permitted by the court against Towmotor in this case may help other plaintiffs who retained Mr. Mayerson, but was counter-productive for Mrs. Krevitz.

Whether or not Towmotor made discovery difficult after this case was started, or even in other cases, the "inquiry" was not cut off because Krevitz, using due diligence, could have had an engineer examine the forklift as the city did.

## LOSS OF PORTIONS OF TRANSCRIPT

It appears that plaintiff is no longer pursuing the argument that a new trial should be granted because portions

of the notes of testimony have been lost.  Since the motion against the city has been abandoned, the notes are no longer pertinent.  The arguments concerning fraud on the part of Towmotor are not related to the notes of the trial.

Further, although in recent years, the court has interceded to track down the missing portions of the notes of testimony, no request was made to the reporters to transcribe the notes until long after the trial.  In fact, according to the affidavit of one reporter, she was specifically told to refrain from typing up the notes shortly after the trial.  Therefore, if anything caused the loss of some of the notes, it was the action of the plaintiff in delaying making the request.  Both reporters left the employ of the city before the request was made, one erased the original materials from the computer, and the other believes she did type up everything.

In any event, loss of some of the notes of testimony does not require a new trial.  Much of the testimony was either recorded on a daily basis or was typed up later.  Under Rule of Appellate Procedure 1923, appellant has an obligation to prepare a statement of the proceedings from the best available means, which could include his notes and notes made by the trial judge.  This was never done.

## CONCLUSION

The court's decision denying plaintiff's motion to amend the complaint to include Towmotor as an original defendant was properly denied, and nothing produced by Mr. Mayerson subsequently shows why the plaintiff could not have retained an expert to make an evaluation of the forklift soon after the accident.

There was no error, and the post-verdict motions were properly denied.

## ORDER

And now, July 8, 1992, upon consideration of post-verdict motions of plaintiff, briefs filed and argument held thereon, it is hereby ordered and decreed that the post-verdict motions of plaintiff are denied.