## Heckman v. WE Pharmaceuticals Inc.

524

*Lee Barry Balefsky,* for plaintiff.
*Walter J. Timby,* for defendant.

ACKERMAN, *J.,* March 8, 2004—Defendant, WE Pharmaceuticals Inc., filed the instant petition to dismiss plaintiff's civil action on the grounds of venue—forum non conveniens pursuant to 42 Pa.C.S. §5322(e) on September 29, 2003.

This case is one of the PPA mass tort litigation cases currently coordinated in the Complex Litigation Center of the Court of Common Pleas of Philadelphia County. It has been brought on behalf of Gary D. Heckman who

is a resident of the state of California, and, who, at all relevant times, was employed in the state of California. Mr. Heckman claims to have consumed a prescription drug product known as Sinuvent containing phenylpropanolamine (PPA) in the state of California. Further, he alleges that as a result of exposure to Sinuvent, he sustained an injury that was discovered, diagnosed and treated in the state of California. Plaintiff's injury occurred in the state of California; Sinuvent was prescribed by a California physician in the state of California; Sinuvent was obtained by the plaintiff at a California pharmacy; all medical treatment received by the plaintiff was received in the state of California; all of plaintiff's medical records are located in the state of California; plaintiff's alleged damages occurred in the state of California; none of the documents related to plaintiff's damages are in Pennsylvania; defendant WE Pharmaceuticals Inc. is a California corporation, with its principal place of business in California; defendant WE Pharmaceuticals Inc.'s witnesses are located in the state of California; all defendant WE Pharmaceuticals Inc.'s records are located in the state of California; the product at issue was not manufactured or sold in Pennsylvania; none of the plaintiff's experts are located in Pennsylvania, with the exception of one located in Media, Pennsylvania, who was retained solely to review plaintiff's medical records.

Plaintiff admitted in his response, or in the alternative, motion for additional time to respond to defendant WE Pharmaceuticals Inc.'s petition to dismiss plaintiff's civil action on grounds of venue in paragraph 9 that "as a result of his ingestion of Sinuvent," *initially* purchased on or about October 2, 1998, he was diagnosed with an intracranial hemorrhage on July 20, 1999. (emphasis

supplied) (See paragraph 9 of defendant WE Pharmaceuticals Inc.'s petition to dismiss.)

In plaintiff's fact sheet, paragraph 4, he states that "plaintiff was diagnosed on or about July 20, 1999 by O'Connor Hospital as having an intracranial hemorrhage." (See paragraph 4, plaintiff's fact sheet.) Plaintiff contends that he first learned that his injuries were related to the ingestion of a product containing PPA on or about April of 2001. (See exhibit "A," short form complaint.)

An alternate forum for the adjudication of the plaintiff's claim is readily available without prejudice to the plaintiff since defendant WE Pharmaceuticals Inc. has submitted a written stipulation to accept service of process in the new forum and has agreed therein not to raise the statute of limitations as a defense to the action. Plaintiff Heckman alleges that, as a result of exposure to Sinuvent, he sustained an injury that was discovered, diagnosed and treated in the state of California. All of the witnesses to the alleged purchase of Sinuvent and exposure to PPA reside in the state of California. Moreover, most, if not all, of the witnesses to the discovery, diagnosis and treatment of the claimed injury and other alleged damages claimed in this suit reside in the state of California. The overwhelming majority of Mr. Heckman's medical and pharmacy records and health care providers who may testify or otherwise have information relevant on the issues of causation and damages, are located in the state of California.

Plaintiff commenced this action containing counts for negligence, breach of implied and expressed warranties, strict liability, violation of Pennsylvania Unfair Trade

Practices and Consumer Protection Law and punitive damages by writ of summons on July 19, 2001 in the Court of Common Pleas of Philadelphia County, at July term 2001, no. 2237. (See docket entries.) A short form complaint was subsequently filed on November 28, 2001, consistent with the directives of the case management order.

The defendant named in this case is WE Pharmaceuticals Inc., which the plaintiff identifies in the short form complaint as the manufacturer and/or seller of Sinuvent. (See paragraph 7.) WE Pharmaceuticals Inc. is actually a wholesale distributor of pharmaceutical products and not the manufacturer of the prescription-only medication identified as Sinuvent. (See paragraph 4, petition of defendant WE Pharmaceuticals Inc. to dismiss on the grounds of forum non conveniens.) Defendant WE Pharmaceuticals Inc. is a California corporation, with its principal place of business in Ramona, California.

On May 30, 2002, defendant filed an answer with new matter to plaintiff's third amended long form complaint in which under *new matter,* paragraph 81, defendant WE Pharmaceuticals Inc. raised and preserved the issue of forum non conveniens.

On June 14, 2002, defendant WE Pharmaceuticals Inc. filed a praecipe to issue a writ of summons to join additional defendant, Kiel Laboratories Inc.; and on that same date, defendant WE Pharmaceuticals Inc. filed a praecipe to issue a writ of summons to join additional defendant, Sovereign Pharmaceuticals Inc.

On November 6, 2002, defendant WE Pharmaceuticals Inc. filed a joinder complaint against additional

defendants, Sovereign Pharmaceuticals Inc. and Kiel Laboratories Inc.

On September 29, 2003, defendant WE Pharmaceuticals Inc. filed its petition to dismiss plaintiff's civil action on the ground of venue—forum non conveniens 42 Pa.C.S. §5322(e). The following statement of facts in the petition are noted in addition to items previously discussed:

(4) Defendant, WE Pharmaceuticals Inc., is a wholesale distributor of pharmaceutical products, not the manufacturer of the *prescription-only medication not over the counter medication (OTC)* identified as "Sinuvent."

(5) WE Pharmaceuticals does *not manufacture* or produce the prescription only medication known as *Sinuvent,* but has entered into purchase orders with manufacturers, Sovereign and Kiel, additional defendants herein.

(12) WE Pharmaceuticals Inc. is a defendant in one other PPA case entitled, *Patricia King v. WE Pharmaceuticals Inc.,* originally filed as case no. 01 CC 06007 in Orange County Superior Court for the State of California, and is coordinated and consolidated with other California PPA cases in the Superior Court in Los Angeles County as Judicial Council Coordinated Proceeding (JCCP), case no. 4166.

(13) There are no other "PPA cases" pending against WE Pharmaceuticals Inc. in Philadelphia County, nor is WE Pharmaceuticals Inc. aware of any Philadelphia County or Pennsylvania individuals who have instituted suit against WE Pharmaceuticals for PPA litigation.

(14) Plaintiff, Gary D. Heckman, is presently, and at all times relevant to this litigation has been, a resident of the state of *California* with a present residence of 4435

Romilly Way, Fremont, California and resided there at the time of his alleged PPA injury and damages.

(15) Defendant, WE Pharmaceuticals Inc., at all times relevant hereto was a *California corporation* with offices located at 1142 "D" Street, Ramona, California.

(18) The plaintiff has testified that he was first prescribed "Sinuvent" in April of 1998 by Dr. Tao for sinusitis and allergies. The plaintiff purchased the Sinuvent from a Rite Aid Pharmacy in *Fremont or Santa Clara, California,* or at a Long's Pharmacy in Fremont or Santa Clara, California.

(19) The prescription medication, Sinuvent, is alleged to be manufactured by either Kiel or Sovereign with whom WE Pharmaceuticals Inc. had entered into purchase orders and then subsequently distributed to either Rite Aid Pharmacy or Long's Pharmacy in the state of *California.*

(20) There is no site of sale or wholesale distribution of the prescription medication known as Sinuvent that occurred in the Commonwealth of Pennsylvania that was distributed to the Rite Aid Pharmacy or Long's Pharmacy in California.

(21) The plaintiff suffered a stroke while at work for the Santa Clara, *California* Police Department on July 19, 1999 (sic July 20, 1999).

(22) The plaintiff was hospitalized at O'Connor Hospital and Modesto Rehabilitation Hospital in *California* for treatment related to the stroke.

(24) The plaintiff alleges that he inquired of Leland Greenwald M.D., a *California neurologist,* as to whether his injuries were sustained as a result of ingesting "Sinuvent."

(25) The plaintiff received all treatment related to his stroke in the *state of California* and *no treatment was rendered in Pennsylvania.* Furthermore, the treatment providers are all beyond the subpoena power of the Court of Common Pleas for Philadelphia County.

(26) All fact and expert medical providers and witnesses to plaintiff's claim are located in *California.* All fact and expert medical providers are beyond the subpoena power of the Court of Common Pleas for Philadelphia County.

(27) An issue in the case is the identification of the manufacturer of the prescription medication, Sinuvent, which involves deposition of records custodians and witnesses at the *Rite Aid Pharmacy in Fremont or Santa Clara, California,* and Long's Pharmacy in Fremont and Santa Clara, California, all of which are located in California and beyond the subpoena power of the Court of Common Pleas for Philadelphia County.

(28) All of the *WE Pharmaceutical employees* with knowledge of any information regarding the product, Sinuvent, are located in *California.*

(29) The only connection or involvement of the *Heckman* case to the Commonwealth of Pennsylvania is that plaintiff's counsel is located in Philadelphia, Pennsylvania.

(30) Defendant, WE Pharmaceuticals Inc., is presently involved in one other PPA-related civil action, *King v. WE Pharmaceuticals Inc.,* and this civil action is presently pending in Los Angeles County, California, PPA cases at JCCP, case no. 4166. (See letter of counsel for WE—exhibit "B".)

(31) California resident and plaintiff Gary D. Heckman has an alternative and more convenient venue available to him in the California PPA litigation located in Los Angeles County, and is not without a site for the litigation with a forum that is familiar with the PPA litigation, and has set up an appropriate forum for California residents to pursue their PPA litigation claims.

(32) To require WE Pharmaceuticals to defend itself on two coasts in the PPA litigation for one case in Pennsylvania with no connection of the plaintiff, his alleged injury and the sale of the product allegedly involved in his injury is unfair and prejudicial to defendant WE.

(33) Defendant's ability to defend itself at trial will be prejudiced by its inability to compel the plaintiff's treatment providers and fact witnesses to testify in Pennsylvania.

A review of the plaintiff's response to petition of defendant to dismiss on the grounds of forum non conveniens makes it clear that the defendant either admits to the averments set forth previously or suggests that as of the date of his response, October 27, 2003, he needed to conduct further discovery. Indeed, the plaintiff requested additional time to conduct further discovery necessary to oppose the petition. Plaintiff states that in paragraph 5 of the affidavit of his attorney he has actively participated in discovery by preparing and submitting a fact sheet (which is required of all actions in the complex litigation section) by appearing in Philadelphia for *a deposition,* and by participating in a *Frye* hearing. Plaintiff states that the trial of this matter is scheduled to commence on February 23, 2003. Obviously he means "2004" which was almost five months after the petition to dis-

miss. The time for discovery had obviously not expired as of the filing of the petition to dismiss and the amount of discovery was significantly limited. The dockets reflect that it was not until October 1, 2003 that the plaintiff's motion to compel a deposition was granted. On October 22, 2003, defendant WE Pharmaceuticals Inc. filed a motion to compel discovery upon the additional defendants.

On October 31, 2003, plaintiff filed a motion for leave to file an amended civil action—short form complaint, inter alia, to allege a direct cause of action against additional defendants, Kiel Laboratories Inc. and Sovereign Pharmaceuticals Inc. On November 7, 2003, additional defendant Kiel Laboratories Inc. filed a response to plaintiff's motion for leave to file an amended civil action—short form complaint, in which the said additional defendant objected to the amendment on the basis that the statute of limitations had expired with respect to any direct claims by the plaintiff against Kiel. In the said response, Kiel noted that the plaintiff had suffered a stroke in July of 1999, but did not file suit against defendant WE Pharmaceuticals Inc. until November 28, 2001 (the date of the filing of the complaint). Actually, the suit against defendant WE Pharmaceuticals Inc. was instituted by the issuance of a writ of summons on July 19, 2001. Defendant WE Pharmaceuticals Inc. did not issue a writ to join the additional defendants until June 14, 2002, not November 2002 (the date of the joinder complaint). Additional defendant Kiel Laboratories Inc. notes that the statute of limitations for personal injury actions is two years (see 42 Pa.C.S. §5524) and contends that since plaintiff did not commence a suit against Kiel nor was Kiel joined within two years of his stroke, plaintiff

cannot amend his complaint to assert a direct cause of action against Kiel. Additional defendant Kiel argues that while plaintiff contends that he did not learn of his cause of action until April of 2001 after he observed a legal advertisement on television, the discovery rule is not applicable here to toll the statute of limitations.

The discovery rule provides that "where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." *Dalrymple v. Brown,* 549 Pa. 217, 223, 701 A.2d 164, 167 (1997). Pennsylvania courts have "consistently applied the discovery rule in only the most limited circumstances." *Id.* at 231, 701 A.2d at 171. The discovery rule will apply in those situations "where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury." *Id.* at 228-29, 701 A.2d at 170.

The discovery rule will not apply where a plaintiff is informed of an injury, even where the plaintiff may not have learned the full consequences of the injury. See *Bradley v. Ragheb,* 429 Pa. Super. 616, 633 A.2d 192 (1993) (statute of limitations began to run when plaintiff had sufficient information to learn of potential misdiagnosis; fact that plaintiff may not have learned full consequences of timely diagnosis did not toll statute). Thus, under Pennsylvania law, the discovery rule will apply only where the existence of the *injury* is unknown to the plaintiff. The statute of limitations will not be tolled where a plaintiff is aware of his injury, but does not know he

has a cause of action. *MacCain v. Montgomery Hospital,* 396 Pa. Super. 415, 424, 578 A.2d 970, 975 (1990).

The fact that plaintiff claims he did not know of his potential cause of action until he saw a legal advertisement on television is of no consequence. Under similar circumstances, courts addressing this issue have held that the discovery rule is inapplicable. For example, in *Olson v. A.H. Robins Co. Inc.,* 696 P.2d 1294 (Wyo. 1985), the court held that the statute of limitations began to run when the plaintiff suffered pregnancy problems after insertion of an intrauterine contraceptive device in 1973. The court rejected an argument that the discovery rule applied because the plaintiff did not learn of her potential cause of action until she read a newspaper article in 1982. The court stated that since the plaintiff knew she had an injury and reasonably should have known the cause of the injury, the statute of limitations began to run and it made no difference that the plaintiff did not know of her legal rights until a later date. *Id.* at 1299; see also, *Braxton-Secret v. A.H. Robins Co.,* 769 F.2d 528 (9th Cir. 1985) (discovery rule did not apply to plaintiff's claim of injury from IUD where plaintiff knew of injury in 1974, but did not file suit until 1982, after plaintiff learned of similar lawsuits against manufacturer).

Similarly, in *Seibert v. General Motors Corp.,* 853 S.W.2d 773 (Tex. Ct. App. 1993), the plaintiff was injured in an automobile accident in 1976 as a result of a lap seatbelt. The plaintiff did not file suit, however, until 1990, after watching a "20/20" program about lap seatbelts. The court rejected the plaintiff's argument, finding that the discovery rule applied only in cases where "at the time that the injury arose, the plaintiff did not and

could not know of the *injury.*" *Id.* at 776. (emphasis added) Since the plaintiff's injury was discoverable and in fact was discovered on the day of the accident, the discovery rule did not toll the statute of limitations.

Additional defendant Sovereign Pharmaceuticals Inc., known as IoPharm Laboratories Inc., also filed a reply to plaintiff's motion for leave to file a civil action supporting additional defendant Kiel Laboratories Inc.'s position on the statute of limitations and noted that the statute of limitations expired as to additional defendants, Kiel and Sovereign, on July 20, 2001 (sic July 19, 2001); and since the plaintiff failed to sue either or both of said additional defendants, and they were not joined before the statute ran, he is precluded from doing so now. The case of *Hoare v. The Bell Telephone Company of Pa.* 509 Pa. 57, 59, 500 A.2d 1112, 1113 (1985) ("[w]here the statute of limitations has run, amendments will not be allowed which introduce a new cause of action or bring in a new party or *change the capacity in which he is sued.*"). (emphasis added)

In this case, as of July 1999, plaintiff knew he was ingesting Sinuvent, a prescription medication, as early as October 23, 1998 and *continued* to do so. He also knew that on July 20, 1999 he was otherwise in good health and able to engage in the occupation of a police officer when he suffered his stroke and certainly should have been able to determine that Sinuvent, his medication, may have been related to his stroke. Based on the facts of this case, which are not contested, and the existing law cited by the additional defendants, this court on November 19, 2003 denied the plaintiff's motion to amend his complaint to allege a direct cause of action against additional

defendants Sovereign Pharmaceuticals Inc. and IoPharm Laboratories Inc. *with prejudice.* Thus, the issue of the plaintiff asserting a direct cause of action against *either* additional defendant was determined by this court's order of November 19, 2003, filed with the prothonotary on November 24, 2003 (note that the docket erroneously notes that plaintiff's motion to amend complaint is *granted;* whereas, the order of this court clearly states that the motion was *denied with prejudice*).

It is clear that the only jurisdiction with any meaningful connection to this case is the state of California, where virtually all of the case-specific events giving rise to Mr. Heckman's claims took place and where nearly all of the case-specific witnesses and evidence are located.

Plaintiff agrees to all of the above facts.

On November 19, 2003, this court stayed the determination of defendant WE Pharmaceuticals Inc.'s petition to dismiss and permitted the plaintiff to conduct additional discovery within 30 days of that order in order to respond fully to the petition to dismiss.

On January 5, 2004, plaintiff filed a supplemental brief after conducting additional depositions of defendant WE Pharmaceuticals Inc. on December 15, 2003. In that supplemental brief, plaintiff contends that he also has direct claims against the two additional defendants. This court has already referred to the fact that the statute of limitations, as a matter of law on the facts of this case, has barred the plaintiff from having any direct claim against the two additional defendants. That was the basis of this court denying the plaintiff's petition to amend the complaint with prejudice.

This court notes that in the statement of matters complained of filed by the plaintiff, the plaintiff does not suggest that this court's order of November 19, 2003, denying plaintiff's petition to amend, was in error. Accordingly, there was no reason for the additional defendants, against whom there is no direct claim by the plaintiff, to file a stipulation waiving any objection to the statutes of limitation for the purpose of an alternative forum. The deposition of defendant WE Pharmaceuticals Inc.'s controller, Warner Newman, taken on December 15, 2003 does not provide any substance or weighty reasons to bring the action in Pennsylvania courts. That deposition only revealed that defendant does business in Pennsylvania sufficient to provide jurisdiction and venue in Pennsylvania, but does not bear on the issue of forum non conveniens.

The Pennsylvania witness employed by a Pennsylvania corporation, Brandi L. Gladwin, custodian of Pharmaceutical Records of Rite Aid Corporation, will only allegedly testify as to whether additional defendant Sovereign or additional defendant Kiel manufactured Sinuvent. Since the plaintiff has no direct claim against either additional defendant Sovereign or additional defendant Kiel, Ms. Gladwin's testimony on that issue will be irrelevant to the claim of the plaintiff against defendant WE Pharmaceuticals Inc. In addition, plaintiff's uncertainty as to this information merely shows that discovery in this case had not really progressed substantially.

The doctrine of forum non conveniens has been codified at 42 Pa.C.S. §5322(e), which provides as follows:

"(e) *Inconvenient forum.*—When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just." 42 Pa.C.S. §5322(e); *Cinousis v. Hechinger Department Store,* 406 Pa. Super. 500, 502, 594 A.2d 731, 732 (1991).

The case of *Humes v. Eckerd Corporation,* 807 A.2d 290 (Pa. Super. 2002) is instructive as to the standard for this court to follow in this case having clarified prior case law.

The *Humes* court stated at page 295:

"In the absence of specific guidance from the Pennsylvania Supreme Court, and after consideration of the existing body of case law, we will follow *Poley, [infra],* and decline to find error in the low court's refusal to apply *Cheeseman* to this section 5322(e) petition."

"In *Poley v. Delmarva Power and Light Company,* 779 A.2d 544 (Pa. Super. 2001), a panel of this court addressed an appeal of a motion to dismiss for forum non conveniens with leave to file in the state of Maryland. In setting forth the standard of review of an order dismissing an action on the basis of forum non conveniens, the *Poley* court did not apply the *Cheeseman* 'oppressive and vexatious' test, but instead declared, inter alia, that:

"The two most important factors for the court to consider [in making the determination of whether to dismiss a suit on the basis of forum non conveniens] are (1) a plaintiff's choice of the place of suit will not be disturbed except for weighty reasons, and (2) no action will be dismissed unless an alternative forum is available to the plaintiff.

*"Poley,* 779 A.2d at 546 (citing *Page v. Ekbladh,* 404 Pa. Super. 368, 590 A.2d 1278 (1991))." (At page 293-94, *Humes, supra.*)

The *Humes* court thus agreed that the trial court was correct in applying the "private and public factors" test instead of the "oppressive and vexatious" test. (Page 290.) The *Humes* court reversed the trial court because a complaint in the underlying case had not yet been filed and, thus, there was an insufficient record to support dismissal under section 5322(e).

The case of *Cinousis v. Hechinger Department Store,* 406 Pa. Super. 500, 503, 594 A.2d 731, 732 (1991), provides the meaning of "private and public factors" to be considered, citing *Plum v. Tampax Inc.,* 399 Pa. 553, 560-62, 160 A.2d 552, 553 (1960) quoting comment at section 117(e) of Restatement (Second) Conflict of Law. See also, *Rini v. New York Central Railroad Co.,* 429 Pa, 235, 238-40 240 A.2d 372, 373-74 (1968), as follows:

" 'It is well within the power of [a trial] court, in the interests of justice, to decline to exercise its jurisdiction where, upon consideration of the parties, the witnesses, the situs of the cause of action and other kindred reasons, the litigation can more appropriately be conducted in another forum.' *Plum v. Tampax Inc., supra,* 399 Pa. at 560, 160 A.2d at 552. See *Koster v. (American) Lumbermen's Mutual Casualty Co.,* 330 U.S. 518, 676 S.Ct. 828, 91 L.Ed. 1067 (1947) and *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). See also, *Alfred v. Philadelphia Coca-Cola Bottling Co. Inc.,* 366 Pa. Super. 510, 513, 531 A.2d 792, 794 (1987) ('[S]ection 5322(e) applies when a tribunal of this jurisdiction determines that a tribunal in another

jurisdiction would offer a more convenient and appropriate situs for the action.'). The factors to be considered in making such a determination have been identified by our Supreme Court as follows:

"(c) Factors to be considered. The two most important factors look to the court's retention of the case. They are (1) that since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed in any event unless an alternative forum is available to the plaintiff. Because of the second factor, the suit will be entertained, no matter how inappropriate the forum may be, if defendant cannot be subjected to jurisdiction in other states. The same will be true if plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept defendant's stipulation that he will not raise this defense in the second state.

"The remaining factors can best be grouped under the two principal interests involved: those of the parties and those of the public. This has been done as follows by Mr. Justice Jackson in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 [67 S.Ct. 839, 843, 91 L.Ed. 1055] (1947):

"If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appro-

priate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to a fair trial, . . .

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is an appropriateness, too, in having the trial . . . in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

"These two sets of factors are not mutually exclusive but rather supplement each other." 406 Pa. Super. at 502-503, 594 A.2d at 732 of *Cinousis.*

In *Cinousis,* 406 Pa. Super. at 504-505, 594 A.2d at 733, the Supreme Court further stated:

"The plaintiffs are not residents of Pennsylvania. The pertinent events giving rise to the cause of action occurred outside of Pennsylvania. The relevant medical records of plaintiff's physician after the alleged accident are located outside of Pennsylvania. The known witnesses reside outside of Pennsylvania and any additional witnesses will most likely reside outside of Pennsylvania. Finally, the plaintiffs have another more convenient forum available to them in New Jersey.

"We discern no abuse of discretion in the trial court's decision.

"Because appellants are not residents of Pennsylvania, the interest of this Commonwealth in providing a forum for its residents to litigate their disputes is not implicated. See *Bolanos v. Gulf Oil Corp.,* 502 F. Supp. 689, 691 (W.D. Pa. 1980), *aff'd,* 681 F.2d 804 (3d Cir. 1982). The fact that the witnesses and documentary evidence are located in New Jersey make it *potentially* more difficult to try this case in Pennsylvania. Continued proceedings in Pennsylvania also offer the *possibility* of delay and increased costs in completing a trial. Additionally, because the events at issue in this case occurred in New Jersey, it is likely that the substantive rights of the parties will be determined according to New Jersey law. Under similar circumstances, it has been observed that: (emphasis supplied)

" 'in view of the paucity of contacts that the instant litigation has with the Commonwealth of Pennsylvania, absent compelling reasons, appropriate weight should be given to the desirability of having a Pennsylvania judge interpret and apply the law of another jurisdiction to determine the respective rights and duties of the parties in question. The only discernible contact that this case has with Pennsylvania is the location of plaintiff's counsel, and we refuse to recognize this as a compelling consideration. In sum, the circumstances presented in the instant case supply the "weighty reasons" necessary to disturb this plaintiff's choice of forum.'

"*Westerby v. Johns-Manville Corp.,* 32 D.&C.3d 163, 174-75 (Phila. Cty. 1982) (cited with approval in *Alford v. Philadelphia Coca-Cola Bottling Co. Inc.,* [336 Pa. Super. 510, 531 A.2d 792 (1987)]). See also, *Daugherty v. Inland Tugs Co.,* [240 Pa. Super. 527, 359 A.2d 465

(1976)] (trial court abused its discretion by refusing to dismiss lawsuit whose only contact with Pennsylvania was that plaintiff's expert witness resided there); *Norman v. Norfolk and Western Railway Co.*, 228 Pa. Super. 319, 323 A.2d 850 (1974) (same).

"In view of the absence of any significant contact between appellant's cause of action and this Commonwealth, the need to apply the substantive law of New Jersey, and the significant backlog of cases which currently plagues the dockets of the Philadelphia court system, we hold that the trial court did not abuse its discretion when it dismissed appellant's action in the instant case."

In the case of *Tyro Industries v. James A. Wood Inc.*, 418 Pa. Super. 296, 299-302, 614 A.2d 279, 281-82 (1992), the facts were essentially as follows:

"Appellant Tyro Industries (Tyro) is a New York corporation registered to do business in Pennsylvania, and which maintains its principal place of business in New York. Appellee AFCO is a business incorporated under the laws of New York. Appellee Great American Insurance Company is a New York corporation. The instant controversy was generated out of a construction project in Northampton County, Pennsylvania, wherein Tyro was a subcontractor with the Pennsylvania Department of Transportation (PennDOT), and was required to maintain insurance coverage in order to work on that project. James Wood Inc. (later released from case), acting as an insurance broker, issued insurance coverage under a Great American Insurance Company policy. AFCO financed payment for the insurance coverage.

"The insurance contract was written and subsequently suspended, for alleged failure to pay premiums, in the state of New York. As a result of the suspension, Tyro was discharged from the construction project. Consequently, Tyro filed a complaint in the Philadelphia Court of Common Pleas alleging that Great American, AFCO, and Wood breached their contracts with Tyro when they caused the insurance coverage to be improperly suspended. . . .

"The court noted that Tyro, AFCO and Great American are all New York corporations. Trial court opinion, 10/17/91 at 4. The court also noted that the insurance financing agreement, the insurance contract, and the alleged breach thereof all arose in New York, and that virtually all witnesses reside in New York. *Id.* The court considered these and other private factors it was required to consider in a forum non conveniens analysis. . . .

"The court took note of the fact that resolution of the case in Philadelphia County would result in a needless conflict of laws situation, because New York banking laws would apply to these facts. Trial court opinion, 10/17/91, at 6-7. The court pointed out that if the case were heard in Philadelphia, Pennsylvania tax dollars would be spent on a controversy with only tangential contacts with Philadelphia."

The *Tyro* court also considered the state of New York's statute of limitations which provided the appellant with sufficient time within which to file another complaint in the appropriate forum (in our case, the stipulation to be filed by the defendant satisfied this requirement).

It was in the context of the necessity in *Tyro* for the filing of a new action that the *Tyro* court mentioned that

"no discovery had yet been taken when the court (trial court) filed its opinion." (418 Pa. Super. at 302, 614 A.2d at 282.) The *Tyro* court does not address whether the extent of discovery already taken could by itself have changed the result.

The case of *Shears v. Rigley,* 424 Pa. Super. 559, 565-67, 623 A.2d 821, 824-25 (1993), provides guidance on the balancing of private and public elements or factors as follows:

"A court must balance the private and public elements and 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' *Petty,* 363 Pa. Super. [277] at 281, 525 A.2d [1230] at 1232 [(1987)] (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

"The trial court must consider the following 'private' elements in making this determination:

" 'the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if a view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'

"*Petty,* 363 Pa. Super. at 281-82, 525 A.2d at 1232 (citing *Gulf Oil Corp.,* 330 U.S. at 508-509, 67 S.Ct. at 843); see also, *Rini v. N.Y. Central R. Co.,* 429 Pa. 235, 239, 240 A.2d 372, 374 (1968); *Plum v. Tampax Inc.,* 399 Pa. 553, 560-61, 160 A.2d 549, 553 (1960).

"Additionally, the following 'public' interests must be factored into the trial court's analysis:

" 'problems of creating court congestion and imposing jury duty upon people of a community which has no relation to the litigation; the appropriateness of having the action tried in a forum where the court is familiar with the law that must govern the case, rather than having a court in some other forum step into a quick-sand of conflict of laws problems and foreign law.'

"*Petty,* 363 Pa. Super. at 282, 525 A.2d at 1232 (citing *Gulf Oil Corp.,* 330 U.S. at 508-509, 67 S.Ct. at 843); see also, *Rini v. N.Y. Central R. Co.,* 429 Pa. 235, 239, 240 A.2d 372, 374 (1968); *Plum v. Tampax Inc.,* 399 Pa. 553, 560-61, 160 A.2d 549, 553 (1960).

"Appellants have presented both 'private' and 'public' elements which, they contend, make a strong case for dismissal. The trial court found that the Shears reside and are domiciled in New Jersey; that the cause of action and location of the K-Mart department store were located in New Jersey; and, that witnesses also live in New Jersey. However, it is apparent from the trial court's 1925(b) opinion that these factors were specifically balanced against the weighty consideration to be given to a plaintiff's choice of forum. The trial court balanced these factors against the following: *that the defendant* and key witness Rigley *lives [sic] in Pennsylvania; that Mrs. Shears received some of her medical treatment in Philadelphia;* that the *appellants sought the expert opinions of physicians located in Pennsylvania who ultimately may be called to testify at trial; and, that K-Mart maintains six stores in the Philadelphia area. The trial court concluded that the private elements* established by Rigley and K-Mart *did not . . .* override the Shears' choice of venue. (emphasis supplied)

"However, our analysis does not stop here. The trial court must also analyze certain 'public' interests before reaching a determination. *Petty, supra.* Appellants take issue with the trial court's failure to consider the Philadelphia court's substantial backlog of civil cases in rendering its decision. Pennsylvania courts have long recognized the administrative burdens that follow when 'litigation is piled up in congested centers instead of being handled at its origin.' *Plum,* 399 Pa. at 561, 160 A.2d at 553. (citation omitted) It is proper for the trial court to address those considerations affecting the court's own administrative and legal problems, including court congestion. *Petty, supra,* Here, however, the trial court did not dismiss the matter. *As we find that there are sufficient contacts with the Philadelphia forum* (emphasis supplied), we decline to juxtapose the scenario where the trial court dismisses a matter based upon public factors with the scenario where a trial court, well within its discretion decides to entertain the litigation.

"The appellants contend that the trial court abused its discretion in weighing the relevant factors based on the holding of this court in *Cinousis v. Hechinger Department Store,* 406 Pa. Super. 500, 594 A.2d 731 (1991). This court recognizes the significance of both the 'private' and 'public' interests to be considered by the trial court. When reviewing the trial court's decision to dismiss a matter based on forum non conveniens, this court will find an abuse of discretion if the trial court has clearly erred in weighing the factors to be considered. *Petty,* 363 Pa. Super. at 282, 525 A.2d at 1232-33. (citation omitted) In *Cinousis, the court considered whether the trial court abused its discretion in dismissing the action* under section 5322(e). The trial court *found that there were*

*no contacts with the Pennsylvania forum other than the fact that the defendant had operated at least one store in Philadelphia.* In contrast, as recounted above, the trial court here found that the appellants had significant contacts with the Pennsylvania forum. Thus, the trial court's refusal to dismiss the action based on these contacts with Philadelphia County, coupled with the trial court's *implicit* finding that the matter would not be placed on a 'stockpile' of pending civil suits, was not an abuse of discretion. (emphasis supplied) *Petty, supra, Brown, supra; Caplan, supra; Hosiery, supra."*

The *Shears* court affirmed the trial court's retention and refusal to dismiss on the merits as well as because no stipulation was offered to waive the statute of limitations, unlike the case at bar.

The public interest in efficient judicial administration strongly favors dismissing this action pending and refiling same in the available alternate forum of California. There is simply no valid reason that the people of Philadelphia County should bear the burdens of adjudicating this case, including jury duty and the expense of conducting a trial. See *Tyro Indus. Inc. v. James A. Wood Inc.,* 418 Pa. Super. 296, 302, 614 A.2d 279, 282 (1992) ("if the case were heard in Philadelphia, Pennsylvania, tax dollars would be spent on a controversy with only tangible contacts with Philadelphia"); *Endre v. Trump Marina,* 42 D.&C.4th 106, 110 (Phila. Cty. 1999) (opining that citizens of Philadelphia should not be subjected to jury duty in action where neither plaintiff nor defendant is a taxpaying citizen of Pennsylvania).

Trial of this lawsuit in Philadelphia would also give rise to needless legal complexity. Because California law

would most likely apply in this case, see *Griffith v. United Air Lines Inc.,* 416 Pa. 1, 203 A.2d 796 (1964), the court would be required to engage in a conflict of laws analysis and to apply unfamiliar foreign law. This fact alone weighs strongly against trying this action in a Pennsylvania court. See *Tyro,* 418 Pa. Super. at 301, 614 A.2d at 282 (emphasizing "appropriateness of having the action tried in a forum where the court is familiar with the law that must govern the case, rather than having a court in some other forum step into a quick-sand of conflict of laws problems and foreign law").

Perhaps the most compelling public interest factor favoring a dismissal or stay on forum non conveniens grounds is the enormous burden that this court already faces in the coordinated PPA litigation. Several hundred individual PPA cases have already been filed in Philadelphia County. Most of those cases, like this one, involve out-of-state plaintiffs who chose to file in Philadelphia County for no apparent reason other than the fact that their attorneys have their offices here—a fact of no relevance to a forum non conveniens analysis. *Cinousis v. Hechinger Dep't Store,* 406 Pa. Super. 500, 504, 594 A.2d 731, 733 (1991).

Under the procedural context of this case, the filing by the defendant of the instant motion five months prior to trial and when discovery had not substantially been completed cannot be said to be untimely.

While Pennsylvania cases under Rule 1006(d)(1) are analyzed under a different standard in order to transfer to another county within Pennsylvania, the case of *Borger v. Murphy,* 797 A.2d 309 (Pa. Super. 2002), approved of a change of venue three days before jury selection on a

petition filed about six weeks prior to the scheduled trial, and stated that the trial court did not abuse its discretion. (At page 312.)

Also, the case of *James E. Wood v. DuPont,* 2003 Pa. Super. 268, 2003 Pa. Super., Lexis 2082, decided en banc by the Superior Court, affirmed a Philadelphia Common Pleas Court judge's transfer of a personal injury case against a DuPont research facility from Philadelphia to Bradford County and stated that timeliness *"in and of itself"* was not a bar to a court's decision to grant a *transfer* even after the close of discovery. Just as Rule 1006(d)(1) did not impose a limit on parties seeking to transfer venue, 42 Pa.C.S. §5322(e) also does not impose a time limit for parties seeking to dismiss for forum non conveniens under that statute. Just as in *Wood, supra,* plaintiff cites no case in Pennsylvania where a motion to dismiss under 42 Pa.C.S. §5322(e) was denied based solely on the timeliness of the motion.

In *Farley v. McDonnell Douglas Truck Services Inc.,* 432 Pa. Super. 456, 638 A.2d 1027 (1994) cited by plaintiffs (in footnote 1, on pages 11 and 12 of response), the Superior Court noted that the trial court which granted motion to dismiss had failed to make a finding that an alternative forum was available, unlike the instant case, and, thus, the Superior Court found the trial court had abused its discretion in dismissing the complaint. The *Farley* trial court, *supra,* failed to consider that a year's worth of discovery had taken place in Philadelphia, whereas we have considered that factor.

In this case, the fact that discovery has already taken place is outweighed by the following: (1) that discovery may be utilized in the new forum, (2) by the private factor analysis showing virtually no contact with Pennsyl-

vania, and (3) by the public factor analysis, on its own. Accordingly, this court has provided little weight to that prior discovery factor.

Here, unlike cases cited in *Farley* which considered delay as a factor, the parties themselves permitted the time for filing such a motion to dismiss and by preparing the various case management orders and providing for a discovery schedule that allowed and justified the time of filing this motion in this case. One must *await* appropriate discovery deadlines in order that the record be established that will permit consideration of a motion to dismiss pursuant to section 5322(e) if such a motion is contemplated.

More importantly, in *Farley* the appellants were residents of Philadelphia, Pennsylvania; appellant was treated in Philadelphia for his injury; and at least one of the defendants had an office in Philadelphia, all factors considered by the trial court in *Farley. But* the *Farley* court emphasized that witnesses concerning the appellant's employment and other key documents and witnesses were all in Pennsylvania and *not* considered by the trial court. (432 Pa. Super. at 463, 638 A.2d at 1030.)

In that context, in *Farley,* the delay and discovery already taken was just the icing on the cake, not a single determinative factor as the plaintiff here argues. Here the congestion is not in Philadelphia courts generally, as argued in *Farley, supra,* but in the mass tort litigation section in which Philadelphia has been a pioneer and the effectiveness of which is now in jeopardy because of the nationwide infusion of cases without significant contact or connection to Pennsylvania. Philadelphia here, unlike *Farley,* does not have an interest in a case without any significant contact and certainly not where a Pennsylvania resident is not involved.

There are clear examples of the defendant having been hampered in defending itself and the ability to defend itself at trial. *Cinousis, supra,* refers to the *"possibility of delay and increased costs in completing a trial."* (406 Pa. Super. at 504, 594 A.2d at 733.) (emphasis added) The admitted facts set forth in the petition to dismiss and the response reasonably suggest that prior to the trial in this case, it is likely that witnesses may be unwilling to testify live and document retrieval may suddenly be difficult with attendant significant costs.

The benefits of Pennsylvania coordinated proceedings will not be lost with an action in a new forum, for example, the state of California. The interests of Pennsylvania citizens to the instant case are tangential and not of any significance.

The so-called trend in mass tort pharmaceutical cases against using the doctrine of forum non conveniens just does not exist in Pennsylvania state courts, an admitted leader in the mass tort pharmaceutical area. There is enough of an exploding area of complex mass tort litigation involving Pennsylvania citizenry and/or key witnesses connected to liability and/or damages to Pennsylvania without burdening a valuable system by stretching its resources to an undesirable limit.

It certainly is reasonable from this record to conclude that the substantial choice of law decisions appear to be non-Pennsylvania in nature.

The emphasis on delay in asserting section 5322(e) motions in federal courts is not shared in Pennsylvania courts as noted *supra.* This is not the first issue on which those courts respectfully disagree.

The case at bar is not a national case and does not have strong ties to Pennsylvania. Pennsylvania intends

to maintain its significant role in mass tort litigation by applying its efforts strenuously in appropriate cases with appropriate Pennsylvania contacts.

Since the advent of asbestos litigation, the number and scope of these cases have grown dramatically. There have been approximately 24 mass tort programs in Philadelphia and currently, there are 13 ongoing programs here: asbestos, bone screw, lead paint, carpal tunnel syndrome, latex gloves, Fen-Phen, Lotramex, the Pier 34 collapse, Silica, Propulsid, *PPA* (emphasis supplied), Baycol and Rezulin. There are presently 7,135 outstanding cases as of September 12, 2003 in the mass tort programs. In 1992, Philadelphia County was the first jurisdiction in the country to create a separate litigation program and facility, the Complex Litigation Center, to handle what the Pennsylvania Supreme Court properly envisioned as an exploding area of tort litigation. This judge was appointed to coordinate the various mass tort programs.

If the instant case is not properly dismissed under section 5322(e), then virtually no case would be subject to such dismissal and that was not the intent of that Pennsylvania Legislation.

On both and either analysis of private and public factors, the balance favors a dismissal of this case because this court has determined that a tribunal in another jurisdiction, *i.e.,* the state of California, offers a more convenient and appropriate situs for the action; and Pennsylvania is an inconvenient forum. In the exercise of this court's discretion, I dismiss this matter because the circumstances presented in this case supply the "weighty reasons" necessary to disturb the plaintiff's choice of forum.

This court finds that in the interest of substantial justice, the matter should be heard in another forum, and the plaintiff's action is dismissed with defendant providing the necessary stipulation noted *supra.*

I have considered the plaintiff's arguments suggesting that the defendant should be estopped from dismissing this case, having conducted extensive discovery prior to the filing of this motion and while a proper item for consideration, the case law suggests that it pales in relation to the other private and public factors and, thus, on balance this case must be dismissed.

The recent Superior Court opinion in *D'Alterio v. New Jersey Transit Rail Operations Inc.,* 2004 Pa. Super. 42 (2004), does not alter the conclusion that this case should be dismissed. The *D'Alterio* case is distinguishable on a number of different grounds, and, therefore, this court should not adopt its holding here.

In *D'Alterio,* the plaintiff was a resident of New Jersey, was injured in New Jersey and brought suit in Philadelphia against New Jersey Transit, a New Jersey corporation that does business in Philadelphia. The case proceeded to arbitration in the Philadelphia Court of Common Pleas, with the panel finding in favor of the plaintiff. The defendant appealed. After a show cause hearing, the trial judge, sua sponte, proceeded to dismiss the plaintiff's case on forum non conveniens grounds. The Superior Court found that the trial court abused its discretion, giving weight to the fact that the parties had engaged in discovery; the case was set for trial; and at no time did the defendant raise the issue of forum non conveniens. Moreover, at the show cause hearing, the defendant did not allege that its access to sources of proof

or witnesses would be impeded by trial in Philadelphia. (*D'Alterio,* slip op. at 7-8.)

In the instant case, the trial judge did not act sua sponte, and the defendant filed a petition to dismiss. In this case, the defendant did preserve and raise the issue of forum non conveniens in his new matter (see *supra*). In this case, the defendant did allege that its access to sources of proof or witnesses would be impeded at trial in Philadelphia.

Perhaps the most obvious difference between this case and *D'Alterio* is the fact that here, a case management order negotiated by the parties themselves governs the filing of dispositive motions. No such case management order was present in the *D'Alterio* case.

Accordingly, the *D'Alterio* case in no way affects the instant opinion of this court.